UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

| | |
|---|---|
| DAVID and AMY CARSON, on their own behalf and as next friends of their child, O.C.; ALAN and JUDITH GILLIS, on their own behalf and as next friends of their child, I.G.; and TROY and ANGELA NELSON, on their own behalf and as next friends of their children, A.N. and R.N., <br><br> Plaintiffs, <br><br> v. <br><br> ROBERT G. HASSON, JR., in his official capacity as Commissioner of the Maine Department of Education, <br><br> Defendant. | Civil Action No. _____ |

**PLAINTIFFS' COMPLAINT**

**INTRODUCTION**

1. This is a federal civil rights action to vindicate the rights guaranteed to three Maine families by the First Amendment's Free Exercise, Establishment, and Free Speech Clauses, and the Fourteenth Amendment's Equal Protection and Due Process Clauses.

2. In Maine, local "school administrative units" (SAUs) that do not operate their own secondary schools may pay tuition for resident students to attend either a private secondary school or another SAU's secondary school. However, by statute, SAUs may not pay tuition to otherwise qualified private schools if those schools are sectarian. Me. Stat. tit. 20-A, § 2951(2).

3. Defendant Robert G. Hasson, Jr. is responsible for enforcing—and does enforce—Maine's statute prohibiting SAUs from making tuition payments on behalf of children whose parents choose to enroll them in otherwise qualified sectarian schools.

4. Plaintiffs reside within the boundaries of three different SAUs that pay tuition for students to attend secular private schools. Plaintiffs, however, send their children to otherwise qualified sectarian schools and thus do not receive tuition payments from those SAUs.

5. Defendant Hasson's enforcement of Maine's denial of a generally available public benefit—tuition payments for secondary education—to Plaintiffs because their children attend a sectarian school violates the principle that the government must not discriminate against, or impose legal difficulties on, religious individuals or institutions simply because they are religious.

6. Defendant Hasson's enforcement of the statutory prohibition against making tuition payments on behalf of families choosing an otherwise qualified sectarian school violates the Free Exercise, Establishment, and Free Speech Clauses of the First Amendment to the U.S. Constitution as well as the Fourteenth Amendment's Equal Protection and Due Process Clauses.

## PARTIES, JURISDICTION, AND VENUE

7. Plaintiffs David and Amy Carson are a married couple who have resided in Glenburn, Maine for 22 years. Their daughter O.C.[1] will be a sophomore at Bangor Christian Schools, a private, nonprofit sectarian school, in the 2018-19 school year. Bangor Christian Schools is the only school O.C. has ever attended and is the same school from which both David and Amy graduated high school. David and Amy send O.C. to Bangor Christian Schools because the school's worldview aligns with their sincerely held religious beliefs and because of the school's high academic standards.

8. Plaintiffs Alan and Judith Gillis are a married couple who have resided in Orrington, Maine for 25 years. Their youngest daughter I.G. will be a junior at Bangor Christian

---

[1] Pursuant to Local Rule 5.2(a)(3), Plaintiffs' minor children are identified only by their initials.

Schools, a private, nonprofit sectarian school, in the 2018-19 school year. Alan and Judith send I.G. to Bangor Christian Schools because the school's worldview aligns with their sincerely held religious beliefs and because of the school's high academic standards.

9. Plaintiffs Troy and Angela Nelson are a married couple who have resided in or near Palermo, Maine for their entire lives. Their daughter, A.N., will be a sophomore at Erskine Academy, a secular private academy in the 2018-19 school year. Their son, R.N., will be in seventh grade at Temple Academy, a private, nonprofit sectarian school in the 2018-19 school year. Troy and Angela send R.N., and would prefer to send A.N., to Temple Academy because the school offers a high-quality educational program that aligns with their sincerely held religious beliefs, but they cannot afford to send more than one child to private school at their own expense.

10. Defendant Robert G. Hasson, Jr., is the Commissioner of the Maine Department of Education (hereinafter "Department"), an agency of the State of Maine, created and empowered under Me. Stat. tit. 20-A, § 201(1) to "[s]upervise, guide and plan for a coordinated system of public education for all citizens of the State," that is headquartered in Augusta, Maine.

11. Defendant Hasson has the primary responsibility and practical ability to enforce the legal and regulatory requirements for SAUs, as well as the primary responsibility and practical ability to ensure that the Department's regulations, policies, and powers are implemented in accordance with the U.S. Constitution.

12. Defendant Hasson is sued only in his official capacity as Commissioner of the Maine Department of Education.

13. Plaintiffs' action, filed pursuant to 42 U.S.C. § 1983 and 28 U.S.C. §§ 2201(a) and 2202, seeks a declaration that Me. Stat. tit. 20-A, § 2951(2) is unconstitutional on its face

and as applied to Plaintiffs, as well as an injunction enjoining Defendant Hasson from enforcing Me. Stat. tit. 20-A, § 2951(2) and enjoining Defendant from otherwise denying tuition payments to tuition-eligible students and their parents on the sole basis that an otherwise eligible private school is sectarian.

14. This Court possesses jurisdiction over this action under 28 U.S.C. §§ 1331 and 1343(a)(3).

15. Pursuant to 28 U.S.C. § 1391(b)(1) and (2), venue is proper in this judicial district because Defendant resides within it and the events giving rise to Plaintiffs' claims occurred within it.

## STATEMENT OF FACTS

16. The Maine State Legislature (hereinafter "Legislature") guarantees every school-aged child residing within the State "an opportunity to receive the benefits of a free public education." Me. Stat. tit. 20-A, § 2(1).

17. The Legislature has vested "in the legislative and governing bodies of local school administrative units" the authority to fulfill the guarantee described in paragraph 16. Me. Stat. tit. 20-A, § 2(2).

18. Accordingly, the SAUs with jurisdiction in the towns in which Plaintiffs reside—the Glenburn and Orrington School Departments and Regional School Unit ("RSU") #12, of which Palermo is a member—are required to provide for the education of children residing within the towns of Glenburn, Orrington and Palermo through twelfth grade. *See* Me. Stat. tit. 20-A, § 1001(8).

19. Neither the Glenburn School Department, the Orrington School Department, nor RSU #12 maintains a secondary school.

20. If a SAU does not maintain a secondary school, then, pursuant to Me. Stat. tit. 20-A, § 5204(4), it must either: (a) contract with a public or private school for the education of its resident secondary students; or, (b) pay tuition for each resident secondary student at the public secondary school or private secondary school of his or her parents' choice that is "approved for the receipt of public funds for tuition purposes," Me. Stat. tit. 20-A, § 2951, and at which the student is accepted.

21. To be "approved" pursuant to Me. Stat. tit. 20-A, § 2951, a private school must:

a. meet the requirements for "basic school approval" under Me. Stat. tit. 20-A, § 2901, Me. Stat. tit. 20-A, § 2951(1);

b. be nonsectarian, Me. Stat. tit. 20-A, § 2951(2);

c. be incorporated under the laws of the State of Maine or of the United States, Me. Stat. tit. 20-A, § 3951(3);

d. comply with the state's reporting, auditing, and student assessment requirements, Me. Stat. tit. 20-A, § 2951(4)-(6); and

e. release student records to the SAU, if a student transfers from the private school, Me. Stat. tit. 20-A, § 2951(7).

22. A private school meets the requirements for basic school approval under Me. tit. 20-A, § 2901 if it meets the State's hygiene and health and safety laws, Me. tit. 20-A, § 2901(1), and is either:

a. accredited by the New England Association of Schools and Colleges, Me. tit. 20-A, § 2901(2)(A); or

b. approved "for attendance purposes," Me. Stat. tit. 20-A, § 2901(2)(B). To be approved "for attendance purposes" a private school must meet a list of

requirements, such as hiring only certified teachers, providing instruction in English, and satisfying certain course and curriculum requirements. Me. tit. 20-A, § 2902.

23. A SAU that chooses to pay tuition on behalf of students, instead of contracting with a single public or private school to educate its resident secondary students, does not determine which schools receive the tuition payments. Rather, each resident secondary student's parents are solely responsible for selecting the school their child will attend.

24. Under Me. Stat. tit. 20-A, § 2951(2), a private school may not be approved for tuition purposes unless it is "a nonsectarian school in accordance with the First Amendment of the United States Constitution." Accordingly, the Department does not permit SAUs to pay tuition on behalf of parents of otherwise tuition-eligible students if those parents choose sectarian schools for their children.

25. Neither the Glenburn School Department, the Orrington School Department, nor RSU #12 has contracted with a single public or private school for the education of their resident secondary students.

26. Because the SAUs in which Plaintiffs reside maintain neither their own secondary school nor contract with a public or private school for the education of their resident secondary students, the Glenburn School Department, the Orrington School Department, and RSU #12 must, for each of their resident secondary students, pay the tuition at the public school or private school that is approved for tuition purposes and that is selected by the resident secondary student's parents. *See* Me. Stat. tit. 20-A, § 5204(4).

27. The Glenburn School Department, the Orrington School Department, and RSU #12 are obligated to pay up to the legal tuition rate, established pursuant to Me. Stat. tit. 20-A,

§§ 5805-06, to the public or private school approved for tuition purposes selected by the resident secondary student's parents.

28. As residents of the Town of Glenburn, Plaintiffs David and Amy Carson are entitled to have the Glenburn School Department pay up to the legal tuition rate to the public or approved private secondary school that they select for their daughter O.C. to attend.

29. As residents of the Town of Orrington, Plaintiffs Alan and Judith Gillis are entitled to have the Orrington School Department pay up to the legal tuition rate to the public or approved private secondary school that they select for their daughter I.G. to attend.

30. David and Amy Carson, as well as Alan and Judith Gillis, have chosen to send their respective daughters, I.G. and O.C., to Bangor Christian Schools.

31. Bangor Christian Schools is a private, non-profit, sectarian school located in Bangor, Maine and is incorporated under the laws of Maine that educates children at the pre-kindergarten through 12th-grade levels.

32. Bangor Christian Schools is fully accredited by the New England Association of Schools and Colleges and thus operates as and is classified by the Maine Department of Education as meeting the requirements for "basic school approval" pursuant to Me. Stat. tit. 20-A, § 2901(1), (2)(A).

33. However, even though Bangor Christian Schools meets the basic school approval requirements for a private school under Me. Stat. tit. 20-A, § 2901(1), (2)(A) and, upon information and belief, is willing to comply with the requirements to be approved for tuition purposes under Me. Stat. tit. 20-A, § 2951, it is ineligible to be approved for tuitioning purposes for the sole reason that the school is sectarian. *See* Me. Stat. tit. 20-A, § 2951(2).

34. Upon information and belief, but for the sectarian exclusion, Bangor Christian Schools would apply for status as a school approved for tuition and accept tuition payments from the Glenburn and Orrington School Departments.

35. As residents of the Town of Palermo, which is a member of RSU #12, Plaintiffs Troy and Angela Nelson are entitled to have RSU #12 pay up to the legal tuition rate to the public or approved private secondary school that they select for their children, A.N. and R.N., to attend.

36. Troy and Angela Nelson send their daughter A.N. to the Erskine Academy, a secular private academy in South China, Maine. RSU #12 does pay tuition for A.N. to attend Erskine Academy, a secular private academy, but Troy and Angela would prefer to send A.N. to Temple Academy, a private, nonprofit sectarian school located in Waterville, Maine that educates children at the pre-kindergarten through 12th-grade levels. However, RSU #12 would not pay tuition for A.N. to attend Temple Academy because it is a sectarian school.

37. Troy and Angela Nelson send their son, R.N., to Temple Academy and they want R.N. to continue attending Temple Academy once he matriculates to secondary school. However, RSU #12 will not pay tuition for R.N. to attend Temple Academy when he matriculates to secondary school because Temple Academy is a sectarian school.

38. Troy and Angela cannot afford to send both of their children to Temple Academy at their own expense.

39. Temple Academy, like most sectarian schools in Maine, currently operates as an unapproved private school that annually affirms to the Maine Department of Education its intent to comply with the state's guidelines for equivalent instruction pursuant to Me. Stat. tit. 20-A, § 5001(3)(A)(1)(b).

40. Temple Academy, however, as a school that is fully accredited by the New England Association of Schools and Colleges, could satisfy the requirements for "basic school approval" pursuant to Me. Stat. tit. 20-A, § 2901(1), (2)(A) if it sought such approval. Upon information and belief, the only reason Temple Academy would consider seeking basic approval would be to become approved for tuition purposes under Me. Stat. tit. 20-A, § 2951, which is currently futile because it is not eligible to be approved for tuition purposes for the sole reason that it is a sectarian school. *See* Me. Stat. tit. 20-A, § 2951(2).

41. Upon information and belief, but for the sectarian exclusion, and upon approval of its School Board, Temple Academy would seek recognition as a basic approved school and apply for status as a school approved for tuition and accept tuition payments from the RSU #12.

42. Prior to 1980, sectarian schools could be approved for tuition purposes. However, in 1982, in response to a 1980 opinion of the Maine Attorney General concluding that paying tuition for students who attend sectarian schools violated the Establishment Clause of the U.S. Constitution, *see* Op. Me. Att'y Gen. 80-2, the Maine Legislature enacted the sectarian exclusion currently codified at Me. Stat. tit. 20-A, § 2951(2).

43. The Establishment Clause of the U.S. Constitution does not prohibit the inclusion of sectarian schools for tuitioning purposes. *Zelman v. Simmons-Harris*, 536 U.S. 639 (2002).

44. Because of the sectarian exclusion codified at Me. Stat. tit. 20-A, § 2951(2), neither David and Amy Carson nor Alan and Judith Gillis can have tuition paid to Bangor Christian Schools by their respective SAUs, the Glenburn and Orrington School Departments, on behalf of their respective daughters, I.G. and O.C.


45. Because of the sectarian exclusion codified at Me. Stat. tit. 20-A, § 2951(2), Troy and Angela Nelson cannot have tuition paid to Temple Academy by RSU #12, on behalf of their children A.N. and R.N.

46. But for the sectarian exclusion codified at Me. Stat. tit. 20-A, § 2951(2), Plaintiffs would have asked their respective SAUs to pay the tuition at their respective sectarian schools.

47. But for the sectarian exclusion codified at Me. Stat. tit. 20-A, § 2951(2), Plaintiffs' respective SAUs would have been required to pay tuition at their respective sectarian schools.

48. None of the Plaintiffs have requested that their respective SAUs pay tuition to their respective sectarian schools because such a request would be futile.

49. Consequently, David and Amy Carson and Alan and Judith Gillis have paid, and must continue to pay, tuition for their respective children, I.G. and O.C., to attend Bangor Christian Schools.

50. Consequently, Troy and Angela Nelson cannot enroll A.N. at Temple Academy because they cannot afford tuition payments for both of their children. Moreover, they have paid, and will be required to continue to pay, tuition for R.N. to attend Temple Academy upon his matriculation to high school.

51. If Plaintiffs prevail in this case, they will request tuition to attend their respective sectarian schools from their respective SAUs, and their respective SAUs will be required to pay such tuition to otherwise qualified sectarian schools.

### COUNT I: FREE EXERCISE OF RELIGION

52. By this reference, Plaintiffs incorporate each and every allegation set forth in paragraphs 1 through 51 of this Complaint as though fully set forth herein.

45. Because of the sectarian exclusion codified at Me. Stat. tit. 20-A, § 2951(2), Troy and Angela Nelson cannot have tuition paid to Temple Academy by RSU #12, on behalf of their children A.N. and R.N.

46. But for the sectarian exclusion codified at Me. Stat. tit. 20-A, § 2951(2), Plaintiffs would have asked their respective SAUs to pay the tuition at their respective sectarian schools.

47. But for the sectarian exclusion codified at Me. Stat. tit. 20-A, § 2951(2), Plaintiffs' respective SAUs would have been required to pay tuition at their respective sectarian schools.

48. None of the Plaintiffs have requested that their respective SAUs pay tuition to their respective sectarian schools because such a request would be futile.

49. Consequently, David and Amy Carson and Alan and Judith Gillis have paid, and must continue to pay, tuition for their respective children, I.G. and O.C., to attend Bangor Christian Schools.

50. Consequently, Troy and Angela Nelson cannot enroll A.N. at Temple Academy because they cannot afford tuition payments for both of their children. Moreover, they have paid, and will be required to continue to pay, tuition for R.N. to attend Temple Academy upon his matriculation to high school.

51. If Plaintiffs prevail in this case, they will request tuition to attend their respective sectarian schools from their respective SAUs, and their respective SAUs will be required to pay such tuition to otherwise qualified sectarian schools.

### COUNT I: FREE EXERCISE OF RELIGION

52. By this reference, Plaintiffs incorporate each and every allegation set forth in paragraphs 1 through 51 of this Complaint as though fully set forth herein.

53. The Free Exercise Clause of the First Amendment to the U.S. Constitution provides, in relevant part, that "Congress shall make no law . . . prohibiting the free exercise" of religion.

54. The Free Exercise Clause applies to states and their subdivisions and municipalities through the Fourteenth Amendment to the U.S. Constitution.

55. The Free Exercise Clause protects against governmental hostility toward religion and requires neutrality toward religion.

56. Me. Stat. tit. 20-A, § 2951(2) is not neutral with respect to religion and is not a law of general applicability. Rather, it discriminates against religion on its face, in that it allows parents whose SAU does not operate its own secondary school, and instead pays tuition for students residing in the SAU to attend the public or private secondary school of the parents' choice, to direct their children's tuitioning payments to private secular schools, but not to private sectarian schools.

57. On its face and as applied to Plaintiffs, Me. Stat. tit. 20-A, § 2951(2) conditions the receipt of a public benefit on the forgoing of religious convictions and free exercise rights.

58. By denying tuition payments for children whose parents choose to send them to sectarian schools, Me. Stat. tit. 20-A, § 2951(2) forces parents either to forgo the receipt of an otherwise generally available benefit or to forgo their right and conviction to educate their children in a sectarian school.

59. On its face and as applied to Plaintiffs, Me. Stat. tit. 20-A, § 2951(2) discriminates and imposes special disabilities based on the religious status of: (a) the schools it bars from receiving tuitioning payments; and (b) the parents whose sincerely held religious beliefs motivate them to choose sectarian schools for their otherwise tuition-eligible children.

60. On its face and as applied to Plaintiffs, Me. Stat. tit. 20-A, § 2951(2) substantially burdens the free exercise rights of parents whose conviction is to educate their child in a sectarian school.

61. Defendant has no compelling, substantial, or even legitimate interest in denying tuition-eligible families private sectarian options while allowing them private secular options.

62. Me. Stat. tit. 20-A, § 2951(2) is not narrowly tailored to achieve, nor is it rationally related to, any governmental interest Defendant purports to have.

63. The Establishment Clause of the U.S. Constitution does not prohibit SAUs from making tuition payments to private sectarian schools chosen by Plaintiffs for their children or by the parents of other tuition-eligible students for their own children.

64. A desire to achieve greater separation of church and state than is already ensured under the Establishment Clause of the U.S. Constitution cannot justify the exclusion of sectarian options in SAUs that pay tuition for students who attend secular private schools.

65. On its face and as applied to Plaintiffs, Me. Stat. tit. 20-A, § 2951(2) violates the Free Exercise Clause of the First Amendment to the U.S. Constitution insofar as it denies sectarian options to tuition-eligible students and their parents.

**COUNT II:  ESTABLISHMENT OF RELIGION**

66. By this reference, Plaintiffs incorporate each and every allegation set forth in paragraphs 1 through 65 of this Complaint as though fully set forth herein.

67. The Establishment Clause of the First Amendment to the U.S. Constitution provides, "Congress shall make no law respecting an establishment of religion."

68. The Establishment Clause applies to states and their subdivisions and municipalities through the Fourteenth Amendment to the U.S. Constitution.

69. The Establishment Clause requires neutrality toward religion.

70. Accordingly, government may neither favor, nor disfavor, religion over non-religion or one religion over another.

71. By denying tuition-eligible students and their parents sectarian options while allowing private secular options, Me. Stat. tit. 20-A, § 2951(2) is, on its face and as applied to Plaintiffs, hostile toward and disapproving of religion.

72. Defendant does not have a valid secular governmental purpose for denying tuition-eligible families sectarian options.

73. On its face and as applied to Plaintiffs, Me. Stat. tit. 20-A, § 2951(2) has the principal and primary effect of inhibiting religion, in that it denies tuition to children whose parents wish to send them to a sectarian school. In this regard, it conditions receipt of an otherwise available public benefit on their willingness to forgo their religious convictions and their right to educate their children in a sectarian school. It thereby creates a substantial disincentive for parents to enroll their children in sectarian schools.

74. On its face and as applied to Plaintiffs, Me. Stat. tit. 20-A, § 2951(2) violates the Establishment Clause of the First Amendment to the U.S. Constitution insofar as it denies sectarian options to tuition-eligible students and their parents.

## COUNT III: FREEDOM OF SPEECH

75. By this reference, Plaintiffs incorporate each and every allegation set forth in paragraphs 1 through 74 of this Complaint as though fully set forth herein.

76. The Free Speech Clause of the First Amendment to the U.S. Constitution provides, in relevant part, that "Congress shall make no law . . . abridging the freedom of speech."

77. The Free Speech Clause applies to states and their subdivisions and municipalities through the Fourteenth Amendment to the U.S. Constitution.

78. The Free Speech Clause prohibits restrictions of speech that are based on content or viewpoint.

79. Plaintiffs' decisions concerning, and making provision for, the education of their children are a form of expression and speech protected by the Free Speech Clause.

80. On its face and as applied to Plaintiffs, Me. Stat. tit. 20-A, § 2951(2) restricts expression and speech based on content and viewpoint because it denies tuition payments only for those children whose parents wish to send them to a sectarian school.

81. Defendant has no compelling, substantial, or even legitimate interest in denying tuition-eligible families sectarian options while allowing private secular options.

82. Me. Stat. tit. 20-A, § 2951(2) is not narrowly tailored to achieve, nor is it rationally related to, any governmental interest Defendant purports to have.

83. On its face and as applied to Plaintiffs, Me. Stat. tit. 20-A, § 2951(2) violates the Free Speech Clause of the First Amendment to the U.S. Constitution insofar as it denies sectarian options to tuition-eligible students and their parents.

### COUNT IV:  EQUAL PROTECTION OF THE LAWS

84. By this reference, Plaintiffs incorporate each and every allegation set forth in paragraphs 1 through 83 of this Complaint as though fully set forth herein.

85. The Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution provides, in relevant part, that "No State shall . . . deny to any person within its jurisdiction the equal protection of the laws."

86. The Equal Protection Clause applies to states and their subdivisions and municipalities.

87. The Equal Protection Clause prohibits the government from discriminating on the basis of religion, which is a suspect classification for equal protection purposes.

88. By denying tuition-eligible students and their parents sectarian options while allowing private secular options, Me. Stat. tit. 20-A, § 2951(2) discriminates, facially and as applied to Plaintiffs, on the basis of religion.

89. Defendant has no compelling, substantial, or even legitimate interest in denying tuition-eligible students and their parents sectarian options while allowing private secular options.

90. Me. Stat. tit. 20-A, § 2951(2) is not narrowly tailored to achieve, nor is it rationally related to, any governmental interest Defendant purports to have.

91. By excluding sectarian options, Me. Stat. tit. 20-A, § 2951(2) makes it more difficult for one group of citizens than for all others to seek aid from the government.

92. On its face and as applied to Plaintiffs, Me. Stat. tit. 20-A, § 2951(2) discriminates on the basis of religion and therefore violates the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution insofar as it denies sectarian options to tuition-eligible students and their parents.

## COUNT V:  DUE PROCESS

93. By this reference, Plaintiffs incorporate each and every allegation set forth in paragraphs 1 through 92 of this Complaint as though fully set forth herein.

94. The Due Process Clause of the Fourteenth Amendment to the U.S. Constitution provides, in relevant part, that "No State shall . . . deprive any person of life, liberty, or property, without due process of law."

95. The Due Process Clause applies to states and their subdivisions and municipalities.

96. Among the liberties protected by the Due Process Clause is the liberty of parents to control and direct the education and upbringing of the children under their control. This liberty is fundamental.

97. On its face and as applied to Plaintiffs, Me. Stat. tit. 20-A, § 2951(2) conditions receipt of a public benefit on the forbearance of the Plaintiffs' liberty to control and direct the education and upbringing of their children. By prohibiting tuition payments for children whose parents choose to send them to sectarian schools, it forces parents to either forgo the benefit of tuition funds for their child or forgo their right to send their child to the school of their choice.

98. Defendant has no compelling, substantial, or even legitimate interest in denying tuition-eligible students and their parents sectarian options while allowing private secular options.

99. Me. Stat. tit. 20-A, § 2951(2) is not narrowly tailored to achieve, nor is it rationally related to, any governmental interest Defendant purports to have.

100. On its face and as applied to Plaintiffs, Me. Stat. tit. 20-A, § 2951(2) violates the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution insofar as it denies sectarian options to tuition-eligible students and their parents.

**PRAYER FOR RELIEF**

Plaintiffs respectfully request the following relief:

A. A declaratory judgment by the Court that Me. Stat. tit. 20-A, § 2951(2), on its face and as applied to Plaintiffs, violates the Free Exercise, Establishment, Free Speech, Equal Protection, and Due Process Clauses of First and Fourteenth Amendments to the U.S.

Constitution insofar as its excludes sectarian options from Maine's system of paying tuition for students to attend private and public schools in towns whose SAUs do not operate a secondary school of their own;

B. A preliminary and permanent injunction prohibiting Defendant from enforcing Me. Stat. tit. 20-A, § 2951(2) or otherwise denying sectarian options to tuition-eligible students and their parents;

C. An award of attorneys' fees, costs, and expenses pursuant to 42 U.S.C. § 1988; and

D. Any other legal and equitable relief the Court may deem appropriate and just.


DATED:  August 21, 2018

        Respectfully submitted,

        <u>s/ Jeffrey T. Edwards</u>
        Jeffrey T. Edwards
        PRETIFLAHERTY
        One City Center
        P.O. Box 9546
        Portland, ME 04112-9546
        Telephone: (207) 791-3000
        Fax: (207) 791-3111
        Email: jedwards@preti.com

        Timothy D. Keller*
        INSTITUTE FOR JUSTICE
        398 S. Mill Avenue, Suite 301
        Tempe, AZ 85281
        Telephone: (480) 557-8300
        Fax: (480) 557-8315
        Email: tkeller@ij.org

        Arif Panju*
        INSTITUTE FOR JUSTICE
        816 Congress Ave, Suite 960
        Austin, TX 78701

Telephone: (512) 480-5936
Fax: (512) 480-5937
E-mail: apanju@ij.org

Lea Patterson*
FIRST LIBERTY INSTITUTE
2001 W. Plano Parkway, Suite 1600
Plano, TX 75075
Telephone: (972) 941-4444
Fax: (972) 423-6162
E-mail: lepatterson@firstliberty.org

Benjamin W. Bull*
FIRST LIBERTY INSTITUTE
227 Pennsylvania Avenue SE
Washington, D.C. 20003
Telephone: (202) 506-4027
Fax: (202) 629-1658
E-mail: bbull@firstliberty.org

Michael K. Whitehead*
Jonathan R. Whitehead*
Whitehead Law Firm, LLC
229 SE Douglas St., Suite 210
Lee's Summit, MO 64063
Telephone: (816) 398-8967
Fax: (816) 875-3291
E-mail: Mike@TheWhiteheadFirm.com
E-mail: Jon@WhiteheadLawLLC.com

*Certificates for admission *pro hac vice* have been filed contemporaneously with the filing of this complaint pursuant to Local Rule 83.1(c). Upon his admission, Mr. Keller will serve as counsel of record.

Attorneys for Plaintiffs David and Amy Carson; Alan and Judith Gillis; and Troy and Angela Nelson