# UNITED STATES DISTRICT COURT

# DISTRICT OF MAINE

| | |
|---|---|
| DAVID AND AMY CARSON, *on their own behalf and as next friends of their child, OC*; ALAN AND JUDITH GILLIS, *on their own behalf and as next friends of their child, I.G.*; AND TROY AND ANGELA NELSON, *on their own behalf and as next friends of their children, A.N. and R.N.*, <br><br> PLAINTIFFS <br><br> v. <br><br> ROBERT G. HASSON, JR., *in his official capacity as Commissioner of the Maine Department of Education*, <br><br> DEFENDANT | CIVIL NO. 1:18-CV-327-DBH |

## DECISION AND ORDER ON MOTION TO INTERVENE

In this lawsuit, the plaintiffs are three families, parents of school-age children who live in communities that do not operate their own public high schools. Under Maine law, these communities instead pay tuition to a public or private secondary school of the parents' choice, so long as the school is nonsectarian. 20-A M.R.S.A. § 2951. These parents want the communities to pay to send their children to religious high schools. They have sued the State Commissioner of Education, seeking a declaration that Maine's statutory prohibition on paying tuition to sectarian schools is unconstitutional. Pls.' Compl. at 1-2 (ECF No. 1).

Three people who live and pay taxes in those communities (two of them retired teachers) seek to intervene in the lawsuit on the side of the State Commissioner, wanting to uphold the prohibition. They oppose tax dollars going to sectarian schools and are ACLU members. They tell me that their lawyers are from the Maine ACLU, the ACLU Program on Freedom of Religion and Belief, and Americans United for Separation of Church and State. Mot. to Intervene at 2-3 (ECF No. 13).

The State Commissioner of Education does not object to the motion to intervene. (Actually, he has not said so directly or through his lawyers in any court filing, but the lawyers for the would-be intervenors have said so and no one has contradicted their assertion.) Id. at 3. The plaintiffs do object, but are agreeable to the plaintiffs and their lawyers appearing as *amicus curiae*, including participating at oral argument on what the plaintiffs say will involve motions for summary judgment that will resolve the case one way or the other. Pls.' Response in Opp'n to Mot. to Intervene ("Pls.' Resp.") at 1-2 (ECF No. 16).

The motion rises or falls under Fed. R. Civ. P. 24(b), which deals with so-called permissive intervention. That rule provides that a "court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact."[1] The case law is clear that a court's ruling on a motion to intervene is discretionary, Daggett v. Comm'n on Governmental Ethics & Election Practices, 172 F.3d 104, 113 (1st Cir. 1999); Massachusetts Food Ass'n v. Massachusetts Alcoholic Beverages Control

---

[1] Fed. R. Civ. P. 24(b)(1)(2).

Comm'n, 197 F.3d 560, 568 (1st Cir. 1999), and that "[i]n exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3).

Here, the opposing parties have not given me much to go on. The movants want to be parties ostensibly because they are ACLU members and oppose their own, or anyone else's, taxes going to religious education and activity. Mot. to Intervene at 4. Equally important seems to be their desire to use their lawyers' "extensive experience and expertise" that they say they have in this kind of lawsuit. Id. at 5. I have my doubts as to whether that meets the Rule 24(b) standard (it casts a pretty wide net, potentially justifying intervention by thousands of taxpayers). But I will assume that it does, because the cases generally describe the requirement of "a claim or defense that shares with the main action a common question of law or fact" as a "low threshold," Massachusetts Food Ass'n, 197 F.3d at 568, and turn quickly to whether the court's ruling for or against intervention abused the court's discretion. Id.

For their part, the plaintiffs are concerned that allowing intervention will delay their lawsuit (they want tuition payments by next school year) and provoke burdensome and prejudicial discovery (they are particularly worried about intrusive inquiry into their religious convictions). Pls.' Resp. at 1-2, 6. In turn, the would-be intervenors say that none of that will occur. Reply at 1 (ECF No. 18).

So, I turn to the exercise of my discretion. As I said many years ago in denying permissive intervention in an election law case:

> Every trial judge knows that where there are multiple parties with the same interest on one side of a case, it is well-nigh impossible to restrain the multiple lawyers from duplicative discovery, examination and cross-examination. It is not a matter of bad faith on the lawyers' part—it is simply every lawyer's competitive belief that he/she can do a better job than the colleague who just sat down, coupled with the natural desire to show the client that the lawyer is working hard for the fee. . . . [A] judge cannot realistically stop the repetition. It is better—if the option exists—simply not to create the occasion for unnecessary repetition in the first place.

Daggett v. Webster, 190 F.R.D. 12, 14 (D. Me. 1999). See also Wright, Miller & Kane, Federal Practice and Procedure: Civil 3d § 1913, p. 481 ("Additional parties always take additional time that may result in delay and that thus may support the denial of intervention.").

Here, I will allow the would-be intervenors' lawyers to bring all their civil liberties skills to bear on the case as *amicus* (or *amici*) *curiae*. At the same time, I am confident that the Maine Attorney General's office has the ability and resources needed to defend the Maine statute fully and expeditiously. (After all, that office has done so successfully in the past, as I am told by the moving parties.) Given the Maine Attorney General's Office's capability, aided by *amici curiae*, the defense will be in good hands. At the end of the day, despite good intentions, there is a risk of added complexity and delay in allowing intervention, and no obvious benefit.

Therefore, I **DENY** the motion to intervene.

**SO ORDERED.**

**DATED THIS 6TH DAY OF DECEMBER, 2018**

/S/ D. BROCK HORNBY
**D. BROCK HORNBY**
**UNITED STATES DISTRICT JUDGE**