UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE
PORTLAND DIVISION

DAVID AND AMY CARSON, ET AL.,
Plaintiffs,

v.

A. PENDER MAKIN, in his official capacity as Commissioner of the Maine

Department of Education,
Defendant,

**Case Number:**
**1:18-cv-00327**

BRIEF OF AGUDATH ISRAEL OF AMERICA AS AMICUS CURIAE IN SUPPORT

OF APPELLEES

Stephen C. Whiting, Esq.
The Whiting Law Firm
75 Pearl Street, Suite 207
Portland, ME 04101
   207-780-0681
   steve@whitinglawfirm.com

Attorney for:
   Agudath Israel of America
   42 Broadway, 14th Floor
   New York, NY 10004
   212-797-9000

## TABLE OF CONTENTS

TABLE OF AUTHORITIES…………………………………………..……………....i

INTEREST OF THE AMICUS CURIAE ......................................................................... 1

ARGUMENT........................................................................................................................ 4

     I.     UNDER THE SUPREME COURT'S DECISION IN TRINITY
           LUTHERAN CHURCH -V.- COMER, THE EXCLUSION OF
           SECTARIAN SCHOOLS FROM MAINE'S SCHOOL CHOICE
           PROGRAM IS UNCONSTITUTIONAL. ....................................................4

CONCLUSION ..................................................................................................................... 8

CERTIFICATE OF SERVICE ……………………………………………..……... 9

TABLE OF AUTHORITIES

Cases

*Church of Lukumi Babalu Aye, Inc. v. Hialeah*, 508 U.S. at 533 (1993)...........................5

*Elk Grove Unified School District v. Newdow*, 542 U.S. 1, 25 (2004) ..............................6

*Employment Division, Department of Human Resources of Oregon v. Smith*, 494 U.S.

    872 at 877 (1990) ........................................................................................................5

*Everson v. Board of Education of Ewing*, 330 U.S. 1 (1947),………………………….4, 5

*McDaniel v. Paty*, 435 U.S. 618, 628 (1978)…………………………………………….4, 7

*Trinity Lutheran Church of Columbia, Inc. v. Comer*, 582 US ____ (2017)……..2, 3, 4, 7

*Wisconsin v. Yoder*, 406 U.S. 205 (1972)..........................................................................6

Statutes

Title 20-A  M.R.S. §2951(2) .....................................................................................2,7,8

Other Authorities

Op. Me. Att'y Gen. 80-2......................................................................................................2

1

<u>INTEREST OF THE AMICUS CURIAE</u>[1]

Agudath Israel of America, founded in 1922, is a national grassroots Orthodox Jewish organization. Among its other functions and activities, Agudath Israel articulates and advances the position of the Orthodox Jewish community on a broad range of legal issues affecting religious rights and liberties in the United States. Agudath Israel regularly intervenes at all levels of government—federal, state, and local; legislative, administrative, and judicial (including through the submission of or participation in amicus curiae briefs)—to advocate for and protect the interests of the Orthodox Jewish community in the United States in particular and religious liberty in general. One of Agudath Israel's roles in this connection is to serve as an advocate for Jewish schools and Jewish education, which Orthodox Jews see as both a personal religious obligation and a critical factor— perhaps the critical factor—in ensuring Jewish religious identity and continuity. The overwhelming majority of Agudath Israel's constituents choose to send their children to the approximately 750 Orthodox Jewish day schools across the country, which collectively educate over 250,000 students.

For over two hundred years, Maine has been committed to providing educational opportunities to its children and educational choices to its parents. Under Maine's program, parents who live in cities and towns without government-run public schools may send their children to private schools at public expense.  Prior to 1980, sectarian

---

[1] We thank Benjamin Helfgott, a law student at Harvard Law School, and Mordechai Biser, Esq., of Agudath Israel of America, for their assistance with the research and drafting of this brief.

schools could be approved for tuition payments.  However, in 1982, in response to an

opinion of the Maine Attorney General that paying for students who attend sectarian

schools violated the Establishment Clause of the U.S. Constitution, see Op. Me. Att'y

Gen. 80-2, the Maine Legislature enacted the sectarian exclusion currently codified at

Title 20-A  M.R.S. §2951(2).  Plaintiffs are parents who live in such towns and desire to

send their children to religious schools, which cannot receive tuition payments due to the

sectarian exclusion.

   Our interest in this case extends well beyond this particular program.  In addition

to the program at issue in this case, there are programs in a number of other states in the

country which also provide government funding to students choosing nonpublic

(including religious) schools, and from time to time proposals for such programs have

been advanced in other states as well.  The constitutional principle that this case could

establish could thus have significance for religious school students in other states as well.

   Agudath Israel respectfully submits this amicus curiae brief in support of Plaintiffs

because we believe that the Supreme Court's decision in *Trinity Lutheran Church of*

*Columbia, Inc. v. Comer*, 582 US ____ (2017) compels a finding that the prohibition of

aid to students attending religious schools codified at Title  20-A  M.R.S. §2951(2)

violates the Free Exercise Clause of the United States Constitution and should be

declared unconstitutional.

ARGUMENT

I.     UNDER THE SUPREME COURT'S DECISION IN TRINITY LUTHERAN
       CHURCH -V.- COMER, THE EXCLUSION OF SECTARIAN SCHOOLS
       FROM MAINE'S SCHOOL CHOICE PROGRAM IS UNCONSTITUTIONAL.


       In *Trinity Lutheran Church of Columbia, Inc. v. Comer*, 582 US _____

(2017), the United States Supreme Court held that a Missouri grant program to

help public and private schools and other nonprofit entities could not

constitutionally prohibit a church from benefitting from the program.   To the

contrary, the Court held that barring the church from receiving benefits from the

program was a violation of the church's rights under the Free Exercise Clause of

the First Amendment.

       The Court, citing *McDaniel v. Paty*, 435 U.S. 618, 628 (1978) (plurality

opinion) (quoting *Yoder*, 406 U.S. at 215), stated that "denying a generally

available benefit solely on account of religious identity imposes a penalty on the

free exercise of religion that can be justified only by a state interest 'of the highest

order.'" This holding is in line with the Court's prior rulings. In *Everson v. Board

of Education of Ewing*, 330 U.S. 1 (1947), the Court upheld a New Jersey law

enabling local school districts to reimburse parents for the costs of transportation

to schools, including religious schools.  As the Court explained in that case, a state

4

"cannot hamper its citizens in the free exercise of their own religion . . . [and] cannot exclude . . . members of any faith, because of their faith . . . from receiving the benefits of public welfare legislation." Id. at 16.  Similarly, the Court cited other cases in which it held that the Free Exercise Clause protects against laws that "impose special disabilities on the basis of . . . religious status." *Church of Lukumi Babalu Aye, Inc. v. Hialeah*, 508 U.S. at 533 (1993) (quoting *Employment Division, Department of Human Resources of Oregon v. Smith*, 494 U.S. 872 at 877 (1990)).

Turning to the Missouri program in question, the Court ruled that the Missouri program "expressly discriminates against otherwise eligible recipients by disqualifying them from a public benefit solely because of their religious character." Such a policy "imposes a penalty on the free exercise of religion that triggers the most exacting scrutiny." *Lukumi*, 508 U.S., at 546.  The Court made clear that barring a benefit is itself a violation of the Free Exercise Clause: "The express discrimination against religious exercise here is not the denial of a grant, but rather the refusal to allow the Church, solely because it is a church—to compete with secular organizations for a grant."  When the State conditions benefits in this way it has "punished the free exercise of religion…. In this case, there is no dispute that Trinity Lutheran is put to the choice between being a church and receiving a public benefit.  The rule is simple: No churches need

apply." The Court concluded that barring Trinity Lutheran from participating in the Missouri grant program was a violation of the Free Exercise Clause. "The exclusion of Trinity Lutheran from a public benefit for which it is otherwise qualified, solely because it is a church, is odious to our Constitution . . . and cannot stand."

A plurality of the Court added, in footnote 3, the following statement: "This case involves express discrimination based on religious identity with respect to playground resurfacing.  We do not address religious uses of funding or other forms of discrimination."

We note that Justices Thomas and Gorsuch expressly did not agree to footnote 3.  Justice Gorsuch, in his concurring opinion, explained why the ruling and logic of Trinity Lutheran extends beyond playground resurfacing:

". . . I worry that some might mistakenly read it [footnote 3] to suggest that only 'playground resurfacing' cases, or only those with some association with children's safety or health, or perhaps some other social good we find sufficiently worthy, are governed by the legal rules recounted in and faithfully applied by the Court's opinion. Such a reading would be unreasonable for our cases are 'governed by general principles, rather than ad hoc improvisations.' *Elk Grove Unified School District v. Newdow*, 542 U.S. 1, 25 (2004) (Rehnquist, C.J., concurring in judgment).  And the

general principles here do not permit discrimination against religious exercise—whether on the playground or anywhere else." (Emphasis added)

We would therefore argue, together with Justice Gorsuch, that while footnote 3 did not expressly extend the decision of the Court to other issues of religious funding, the logic of the Court's arguments in *Trinity Lutheran* and all the cases it cited make clear that there should be no distinction as to whether a state is denying funds for playground resurfacing or, as in the case at hand, denying the benefits of the state's tuition program for families who choose to educate their children in religious schools. Under the Free Exercise Clause, only a state interest "of the highest order" can justify a policy that discriminates against religious institutions and individuals in the provision of government benefits. *McDaniel*, 435 U.S. at 628 (plurality opinion) (quoting *Yoder*, 406 U.S. at 215).

*Trinity Lutheran* stands for the proposition that state laws cannot be applied to bar programs like Maine's tuition assistance program from applying equally to students who choose to attend religious schools. Therefore, this court should strike down § 2951(2) as a violation of the Free Exercise Clause of the United States Constitution.

7

CONCLUSION

For the foregoing reasons, we respectfully urge this Court to strike down

§ 2951(2) and allow sectarian schools to be eligible for funding under Maine's

school choice program.

Date: April 4, 2019

                                       _/S/   Stephen C. Whiting_____
                                      Stephen C. Whiting, Esq., Bar No. 559
                                      The Whiting Law Firm
                                      75 Pearl Street, Suite 207
                                      Portland, ME 04101
                                           207-780-0681
                                           steve@whitinglawfirm.com

                                      Attorney for:
                                           Agudath Israel of America
                                           42 Broadway, 14th Floor
                                           New York, NY 10004
                                           212-797-9000

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 4, 2019 a copy of the foregoing was filed electronically.  Notice of filing will be sent to all parties for whom counsel have entered an appearance by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.


Date: April 4, 2019

        _/S/_   Stephen C. Whiting_____
        Stephen C. Whiting, Esq., Bar No. 559
        The Whiting Law Firm
        75 Pearl Street, Suite 207
        Portland, ME 04101
         207-780-0681
         steve@whitinglawfirm.com

        Attorney for:
         Agudath Israel of America
         42 Broadway, 14th Floor
         New York, NY 10004
         212-797-9000

9