# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MAINE

|  |  |
|---|---|
| DAVID and AMY CARSON, on their own behalf and as next friends of their child, O.C.; ALAN and JUDITH GILLIS, on their own behalf and as next friends of their child, I.G.; and TROY and ANGELA NELSON, on their own behalf and as next friends of their children, A.N. and R.N., <br><br> Plaintiffs, <br><br> v. <br><br> A. PENDER MAKIN, in her official capacity as Commissioner of the Maine Department of Education, <br><br> Defendant. | Civil Action No. 1:18-cv-00327-DBH |

## Plaintiffs' Reply in Support of Their Motion for Summary Judgment

Under the U.S. Supreme Court's decision in *Trinity Lutheran Church of Columbia, Inc. v. Comer*, 137 S. Ct. 2012 (2017), and because there are no material fact disputes, Plaintiffs are entitled to summary judgment as a matter of law. Fed. R. Civ. P. 56(a). Defendant's responsive arguments—that Plaintiffs lack standing, that strict scrutiny does not apply here, and that there is no authority for their Establishment and Free Speech Clause claims—are unavailing.[1] To the contrary, Plaintiffs' challenge to 20-A M.R.S.A. § 2951(2) (the "Sectarian Exclusion") must prevail because denying them the benefits of town tuitioning based on their desire to enroll their children in a religious school violates their fundamental rights to religious liberty.

---

[1] Defendant's opposition brief does not address Plaintiffs' Equal Protection Clause arguments. Plaintiffs therefore rest on the arguments in their Motion for Summary Judgment (Pls.' Mot. Summ. J. 23-24) and Opposition to Defendant's Motion for Summary Judgment (Pls.' Opp. Def.'s Mot. Summ. J. 22-24).

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ........................................................................................... ii

ARGUMENT .............................................................................................................2

   I.   Defendant's Standing Argument Fails as a Matter of Law Because Maine's Human Rights Act Fully Protects the Hiring Practices of Religious Schools That Accept Public Funds................................................................................................2

   II.   The Free Exercise Clause Demands Strict Scrutiny Here Because Maine Denies an Otherwise Generally Available Public Benefit Based on Religion ...................4

      A.  The Tuition Benefit at Issue in This Case Provides Students with Publicly Funded Tuition to the Public or Private School of Their Parents' Choice. It Does Not Provide Students with a Free Public Education ...........................................5

      B.  *Trinity Lutheran* No Longer Permits a Broad Reading of *Locke v. Davey* and Thus Makes Clear That Strict Scrutiny Applies Here ..........................................6

      C.  The Sectarian Exclusion Is Not Justified by a Compelling Government Interest. And Even if it is Relevant, the Legislature's Rejection of "An Act to Eliminate Discrimination Against Parents Who Want to Send Their Children to Religious Private Schools" Simply Infects the Sectarian Exclusion with Religious Animus Rather Than Justifying It with a Compelling Interest...................................8

   III.   The Sectarian Exclusion Violates the Establishment Clause by Disfavoring Religion.....11

   IV.   The Sectarian Exclusion Violates the Free Speech Clause by Denying Plaintiffs the Tuition Benefit Based on Both the Content and Viewpoint of the Speech They Want Their Children to Hear at Their Schools of Choice ..........................................14

CONCLUSION.......................................................................................................15

## **TABLE OF AUTHORITIES**

**Cases**

*Bd. of Educ. v. Allen*,
  392 U.S. 236 (1968) .................................................................................................. 11

*Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*,
  508 U.S. 520 (1993) .................................................................................................. 9

*City of Cleburne v. Cleburne Living Ctr.*,
  473 U.S. 432 (1985) .................................................................................................. 9

*Colorado Christian University v. Weaver*,
  534 F.3d 1245 (10th Cir. 2008) ................................................................................ 8

*Emp't Div., Dep't of Human Res. v. Smith*,
  494 U.S. 872 (1990) .................................................................................................. 12

*Eulitt v. Me. Dep't of Educ.*,
  386 F.3d 344 (1st Cir. 2004) ........................................................................... 2, 7, 14

*Everson v. Board of Educ.*,
  330 U.S. 1 (1947) ...................................................................................................... 12

*F.C.C. v. Beach Commc'ns, Inc.*,
  508 U.S. 307 (1993) .................................................................................................. 9

*Hunter v. Underwood*,
  471 U.S. 222 (1985) .................................................................................................. 9

*Locke v. Davey*,
  540 U.S. 712 (2004) ...................................................................................... 4, 6, 7, 8

*Lyng v. Northwest Indian Cemetery Protective Ass'n*,
  485 U.S. 439 (1988) .................................................................................................. 13

*Masterpiece Cakeshop, Ltd. v. Colo. Civil Rights Comm'n*,
  138 S. Ct. 1719 (2018) ......................................................................................... 9, 10

*Mitchell v. Helms*,
  530 U.S. 793 (2000) .................................................................................................. 13

*Reed v. Town of Gilbert*,
  135 S. Ct. 2218 (2015) ..................................................................................... 9, 10, 15

*Rosenberger v. Rector and Visitors of Univ. of Va.*,
   515 U.S. 819 (1995) ............................................................................ 15

*Sherbert v. Verner*,
   374 U.S. 398 (1963) ............................................................................ 14

*Trinity Lutheran Church of Columbia v. Comer*,
   137 S. Ct. 2012 (2017) ................................................................ *passim*

*W. Va. State Bd. of Educ. v. Barnette*,
   319 U.S. 624 (1943) ............................................................................ 12

*Widmar v. Vincent*,
   454 U.S. 263 (1981) .............................................................................. 7

*Zelman v. Simmons-Harris*,
   536 US 639 (2002) ............................................................................... 7

*Zobrest v. Catalina Foothills Sch. Dist.*,
   509 U.S. 1 (1993) ............................................................................... 12

Statutes

5 M.R.S.A. § 4572(1)(A) ........................................................................... 3

5 M.R.S.A. § 4573-A(2) ............................................................................ 3

20-A M.R.S.A. § 2951 ............................................................................... 5

20-A M.R.S.A. § 2951(2) .................................................................. *passim*

20-A M.R.S.A. § 5204(4) ........................................................................... 5

20-A M.R.S.A. § 5806(2) ........................................................................... 6

Rules

Fed. R. Civ. P. 56(a) ........................................................................... 1, 15

Other Authorities

Maine Department of Education, *2018-2019 Tuition Rates for Private Schools*, https://www.
   maine.gov/doe/sites/maine.gov.doe/files/inline-files/FY19_PrivateSchoolsApprovedTuition_
   03May2019.pdf (last visited 5/8/10) ...................................................... 6

Private School Review, *Hebron Academy Profile* (2018-2019) (72% acceptance rate), https://
www.privateschoolreview.com/hebron-academy-profile (last visited 5/8/2019) ...................... 6

Private School Review, *Kents Hill School Profile* (2018-2019) (75% acceptance rate), https://
www.privateschoolreview.com/kents-hill-school-profile (last visited 5/8/2019) ...................... 6

Private School Review, *Maine Private High Schools by Tuition Cost (2018-2019)*, https://www.
privateschoolreview.com/tuition-stats/maine/high (last visited 5/8/2019) ................................ 6

## ARGUMENT

The U.S. Supreme Court's decision in *Trinity Lutheran* has displaced the First Circuit's merits decision in *Eulitt v. Me. Dep't of Educ.*, 386 F.3d 344 (1st Cir. 2004). As a result of *Trinity Lutheran*, the Sectarian Exclusion must be struck down as a violation of the Free Exercise Clause because it denies a generally available public benefit to citizens based on religion, without any compelling justification for that denial. Of course, the Sectarian Exclusion also violates the Establishment, Equal Protection, and Free Speech Clauses of the First and Fourteenth Amendments. Below, Plaintiffs rebut Defendant's arguments that Plaintiffs lack standing, that strict scrutiny is not the proper level of judicial scrutiny, that their Establishment Clause claim lacks a basis in law, and that their claim under the Free Speech Clause is not properly before the Court in light of *Trinity Lutheran*.

I.   **Defendant's Standing Argument Fails as a Matter of Law Because Maine's Human Rights Act Fully Protects the Hiring Practices of Religious Schools That Accept Public Funds.**

Defendant contends that Plaintiffs lack standing because, in her view, the two private schools where Plaintiffs have enrolled, or want to enroll, their children are unlikely to accept publicly funded tuition payments even if the Sectarian Exclusion is struck down.[2] Def.'s Opp. Pls.' Mot. Summ. J. ("Opp.") 1. The basis for Defendant's belief about the private schools is

---

[2] Defendant's standing argument is based on her mistaken belief that Plaintiffs must show with certainty that a ruling in their favor will result in their ability to use the tuition benefit at Bangor Christian Schools and Temple Academy. Def.'s Mot. Summ. J. 10-14. This mistaken view is answered not only in Plaintiffs' Response in Opposition to Defendant's Motion for Summary Judgment, Pls.' Resp. Opp. Def.'s Mot. Summ. J. 4-8, but in *Trinity Lutheran* itself. "Trinity Lutheran is not claiming any entitlement to a subsidy. It instead asserts a right to participate in a government benefit program without having to disavow its religious character." *Trinity Lutheran*, 137 S. Ct. at 2022. "The express discrimination against religious exercise here is not the denial of a grant, but rather the refusal to allow the Church—solely because it is a church—to compete with secular organizations for a grant." *Id.* Plaintiffs are in the same position as was the Trinity Lutheran Church—their injury is not the denial of tuition per se, it is the exclusion from the program based on their religious exercise.

two-fold. The first basis is the testimony of the two schools that they would not be willing to accept publicly funded tuition payments if doing so would require them to alter their existing, religiously motivated hiring practices. Opp. 2 (citing Jt. Stip. Facts 127, 184). The second basis is her mistaken belief that "it is unlawful under the MHRA [the Maine Human Rights Act] to refuse to *hire* a person because of his or her sexual orientation." Opp. 2 (citing 5 M.R.S.A. § 4572(1)(A)). But Defendant's legal conclusion regarding hiring is plainly erroneous.

Far from requiring changes to their hiring practices, the MHRA protects the right of religious schools to give "preference in employment to individuals of its same religion" and to "require that all applicants and employees conform to the religious tenets of that organization." 5 M.R.S.A. § 4573-A(2). Defendant admits that this provision protects religious organizations that receive public funds. Def.'s Mot. Summ. J. 13 n.3. Thus, as explained more fully in Plaintiffs' Opposition to Defendant's Motion for Summary Judgment, there really is no dispute that the schools may require all their employees to affirm they are born-again Christians and require all their employees to conform their conduct to the school's religious tenets—even if they accept publicly funded tuition payments. Pls.' Resp. Opp. Def.'s Mot. Summ. J. 8-10.

Moreover, Defendant does not dispute that nothing in the MHRA would require the religious schools to alter their admissions standards. *See* Pls.' Mot. Summ. J. 7 n.7. Defendant also does not claim that anything in Maine law would require the religious schools to alter their curriculum. As such, the law is clear that the religious schools would not have to make any changes to their admissions standards, hiring criteria, or curriculum. The record evidence thus points to a very high likelihood that both Bangor Christian Schools and Temple Academy will accept publicly funded tuition payments if the Sectarian Exclusion is eliminated. Jt. Stip. Facts 127-28 (Doc. 25, PageID# 918) ("If BCS did not have to make any changes in how it operates, it

would consider accepting public funds for tuition purposes."; "[A]ll things being equal, accepting public funds for tuition purposes is something BCS would consider."); Jt. Stip. Fact 182 (Doc. 25, PageID# 925) ("Before accepting public funds for tuition purposes, Temple Academy would want to have in writing that the school would not have to alter its admission standards, hiring standards, or curriculum, and if it had that in writing, Temple Academy would consider accepting public funds for tuition purposes."). For the foregoing reasons, and for the reasons stated in Plaintiffs' Response in Opposition to Defendant's Motion for Summary Judgment, *see* Pls.' Resp. Opp. Def.'s Mot. Summ. J. 3-10, which they incorporate herein by this reference, Plaintiffs possess standing to pursue their claims against the Sectarian Exclusion.

## II.  The Free Exercise Clause Demands Strict Scrutiny Here Because Maine Denies an Otherwise Generally Available Public Benefit Based on Religion.

Defendant tries to escape the strict scrutiny *Trinity Lutheran* requires by asserting that Plaintiffs "misinterpret[] . . . the benefit offered by Maine's tuition program." Opp. 1. Rather than the benefit being tuition to attend the public or private school of the parents' choice (unless the school is a religious school), 20-A M.R.S.A. § 2951(2), Defendant claims the tuition benefit is "a free, public education." Def.'s Mot. Summ. J. 18. Defendant knows that if the benefit at issue here is a generally available benefit, then *Trinity Lutheran* and strict scrutiny applies. So, it is important for Defendant to avoid that conclusion, which is why this dispute matters. The competing views of the benefit offered lead to different levels of judicial scrutiny.

Defendant does not identify the level of scrutiny she believes applies to this case (just that it should be a lower level of scrutiny) but asserts that the outcome here is controlled by *Locke v. Davey*, 540 U.S. 712 (2004), rather than *Trinity Lutheran*. Opp. 4-5. As shown below, the benefit at issue in this case is not, as Defendant asserts, a free public education. Rather, it is tuition to the public or private school of the parents' choice. Because Maine excludes parents

4

who choose religious schools, *Trinity Lutheran* makes it abundantly clear that the State's

Sectarian Exclusion is not only subject to strict scrutiny, but that it fails strict scrutiny because no

compelling interest justifies discriminating against citizens who desire to enroll their children in

a religious school.

### A. The Tuition Benefit at Issue in This Case Provides Students with Publicly Funded Tuition to the Public or Private School of Their Parents' Choice. It Does Not Provide Students with a Free Public Education.

Students who reside in towns that neither operate their own public secondary schools nor

contract for secondary school privileges are eligible for the tuition benefit at issue in this case.

20-A M.R.S.A. § 5204(4). All Plaintiffs reside in such towns. Jt. Stip. Fact 10 (Doc. 25, PageID#

902) ("[T]he towns in which Plaintiffs reside are obligated to pay up to the legal tuition rate . . .

to the public or private school approved for tuition purposes selected by the resident secondary

student's parents.") (citations omitted). And the tuition benefit is a generally available benefit

because all parents who live in tuitioning towns and who have a secondary school student are

entitled to receive it. Unless, of course, they enroll their student in a religious school. This is

because the Defendant, in accordance with 20-A M.R.S.A. § 2951(2)'s Sectarian Exclusion, will

only approve "nonsectarian" private schools to accept publicly funded tuition payments from

parents. (20-A M.R.S.A. § 2951 governs only approval of private schools for tuition purposes).

Families who seek to enroll their children in religious schools whose curriculum is aligned with

their religious worldview (like Plaintiffs) are thus denied a generally available benefit. And, as

shown next, this generally available tuition benefit simply cannot be construed as a program that

provides students with a free, public education.

The nonsectarian private schools that receive approval to accept publicly funded tuition

payments are not required to accept all students. 20-A M.R.S.A. § 5204(4). The private schools

remain private and may deny enrollment to students who do not meet the schools' admissions criteria. Nor are the private schools required to accept the legal tuition rate as full payment. 20-A M.R.S.A. § 5806(2). Parents may thus be obligated to pay the difference between an approved private school's actual tuition and the tuition rate set by the State. At its most basic level, the tuition benefit is not designed to, nor is it capable of, providing students who live in tuitioning towns with a free, public education. Rather, it provides (at least) partial public funding to attend the school of the parents' choice where the student can gain admission.[3] Unless the parents choose a religious school. Because it denies students in tuitioning towns the tuition benefit based on their parents' choice of a religious school, the Sectarian Exclusion is subject to strict scrutiny.

### B. *Trinity Lutheran* No Longer Permits a Broad Reading of *Locke v. Davey* and Thus Makes Clear That Strict Scrutiny Applies Here.

Defendant makes two critical interpretative errors regarding *Locke*. First, Defendant asserts that, under *Locke*, there is no "affirmative requirement that public entities fund religious activity simply because they choose to fund the secular equivalent." Opp. 1. But *Locke* stands for no such thing. *Locke* merely permitted a narrow exclusion of a historically controversial concern (funding the training of clergy) from a postsecondary scholarship program that allowed students to attend religious schools using their scholarship monies. 540 U.S. at 724-25. Participating students were even permitted to take devotional and other religious courses at those schools. *Id.*

---

[3] The maximum tuition rate for the 2018-2019 school year is $11,759.07. *See* Maine Department of Education, *2018-2019 Tuition Rates for Private Schools*, https://www.maine.gov/doe/sites/maine.gov. doe/files/inline-files/FY19_PrivateSchoolsApprovedTuition_03May2019.pdf (last visited 5/8/10). Many of the approved private schools' tuition far exceeds the maximum legal rate. *Compare id. with* Private School Review, *Maine Private High Schools by Tuition Cost (2018-2019)*, https://www.privateschool review.com/tuition-stats/maine/high (last visited 5/8/2019). The schools also do not have a 100% acceptance rate. *See, e.g.*, Private School Review, *Kents Hill School Profile* (2018-2019) (75% acceptance rate), https://www.privateschoolreview.com/kents-hill-school-profile (last visited 5/8/2019) and Private School Review, *Hebron Academy Profile* (2018-2019) (72% acceptance rate), https://www. privateschoolreview.com/hebron-academy-profile (last visited 5/8/2019).

Second, Defendant believes *Locke* involved "traditional state antiestablishment interests." Opp. 5. Defendant claims that these traditional interests were "relevant even after *Zelman* [*v. Simmons-Harris*, 536 U.S. 639 (2002) (upholding Cleveland private school voucher program that permitted families to enroll scholarship recipients in religious as well as nonreligious schools against an Establishment Clause challenge)], and [which] the *Trinity Lutheran* Court left alone." Opp. 5. However, *Locke* did not rest on some generic or "traditional" antiestablishment interest, but rather one very specific and narrow historic interest. "[T]he *only* interest at issue here is the State's interest in not funding the religious training of clergy." *Locke*, 540 U.S. at 722 n.5 (emphasis added). Indeed, the Court could "think of few areas in which a State's antiestablishment interests come more into play." *Id.* at 722. Joshua Davey thus sought funding for an "'essentially religious endeavor . . . akin to a religious calling'" and "opposition to such funding 'to support church leaders' lay at the historic core of the Religion Clauses." *Trinity Lutheran*, 137 S. Ct. at 2023 (quoting *Locke*, 540 U.S. at 721-22). But a high school education is a far cry from a religious endeavor or calling like the ministerial training at issue in *Locke*.

Moreover, *Trinity Lutheran* expressly reaffirmed that any state interest in "achieving greater separation of church and State than is already ensured under the Establishment Clause of the Federal Constitution—is limited by the Free Exercise Clause." 137 S. Ct. at 2024 (quoting *Widmar v. Vincent*, 454 U.S. 263, 276 (1981)). While the outer bounds of *Locke*'s holding may not have been certain prior to *Trinity Lutheran*, i.e., whether its "play in the joints" language, 540 U.S. at 718, would have permitted the wholesale exclusion of religion from a public benefit program, its limits are certain now.[4] It is thus Defendant who misunderstands and misapplies *Locke* and *Trinity Lutheran*. Not Plaintiffs.

---

[4] The debate concerning *Locke*'s boundaries, pre-*Trinity Lutheran*, can be understood by contrasting the First Circuit's "broad[]" reading of *Locke*, *see Eulitt v. Me. Dep't of Educ.*, 386 F.3d 344, 355 (1st Cir.

Defendant summarizes her argument in a footnote, stating that, "[i]n other words, a statute does not lose its neutrality, and thus become subject to strict scrutiny, simply because it precludes state funding of a religious educational choice." Opp. 5 n.2. Defendant could not be more wrong. *Trinity Lutheran* holds that a statute violates the neutrality principle and becomes subject to strict scrutiny if it singles out religion for exclusion from an otherwise generally available benefit. *Trinity Lutheran*, 137 S. Ct. at 2019 ("[D]enying a generally available benefit solely on account of religious identity imposes a penalty on the free exercise of religion that can be justified only by a state interest of the highest order.") (quotation omitted). Just like in *Trinity Lutheran*, Plaintiffs here are being denied a public benefit because of their religious character. In other words, "[t]he Department's policy expressly discriminates against otherwise eligible recipients by disqualifying them from a public benefit solely because of their religious character." *Id*. at 2021. "[S]uch a policy imposes a penalty on the free exercise of religion that triggers the most exacting scrutiny." *Id*.

**C. The Sectarian Exclusion Is Not Justified by a Compelling Government Interest. And Even if it is Relevant, the Legislature's Rejection of "An Act to Eliminate Discrimination Against Parents Who Want to Send Their Children to Religious Private Schools" Simply Infects the Sectarian Exclusion with Religious Animus Rather Than Justifying It with a Compelling Interest.**

In response to Plaintiffs' argument that the motivation for the Sectarian Exclusion was a (misplaced) concern about violating the Establishment Clause, Defendant contends that "it would not matter whether there was evidence of the Legislature's actual reasons for excluding sectarian schools from the public tuition program" because courts do not require the government "to

---

2004), with the Tenth Circuit's much narrower reading of *Locke* in *Colorado Christian University v. Weaver*, 534 F.3d 1245, 1255 (10th Cir. 2008) ("The [*Locke*] opinion . . . *does not extend to the wholesale exclusion of religious institutions and their students from otherwise neutral and generally available government support*.") (emphasis added).

articulate its reasons for enacting a statute." Opp. 2. (quoting *F.C.C. v. Beach Commc'ns, Inc.*, 508 U.S. 307, 315 (1993)). Defendant thus concludes that "it is entirely irrelevant for constitutional purposes whether the conceived reason for the challenged distinction actually motivated the legislature." Opp. 2-3 (still quoting *Beach Commc'ns,* 508 U.S. at 315). As Plaintiffs explained in their Motion for Summary Judgment, the Legislature's reason for adopting the Sectarian Exclusion is plain from the text of the exclusion, which states that private schools must be a "nonsectarian school *in accordance with the First Amendment of the United States Constitution*." 20-A M.R.S.A. § 2951(2) (emphasis added). And not only does the text control, but the government's original purpose matters. *See* Pls.' Mot. Summ. J. 15-17.

While the U.S. Supreme Court has been inconsistent regarding the relevancy of a legislature's motivating purpose under the rational basis test, *see City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432 (1985) (considering evidence of discrimination against the mentally retarded under the rational basis test), in the context of fundamental rights protected by the First and Fourteenth Amendments, the Court routinely inquires into legislative motives. *E.g.*, *Masterpiece Cakeshop, Ltd. v. Colo. Civil Rights Comm'n*, 138 S. Ct. 1719, 1731 (2018) (holding that under the Free Exercise Clause states have a "duty under the First Amendment not to base laws or regulations on hostility to a religion or religious viewpoint"); *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 532 (1993) ("In our Establishment Clause cases we have often stated the principle that the First Amendment forbids an official purpose to disapprove of a particular religion or of religion in general."); *Hunter v. Underwood*, 471 U.S. 222, 233 (1985) (striking down a racially discriminatory provision of Alabama's Constitution under the Equal Protection Clause because "its original enactment was motivated by a desire to discriminate . . . and the section continues to this day to have that effect"); *Reed v.*

9

*Town of Gilbert*, 135 S. Ct. 2218, 2228-29 (2015) (Under the Free Speech Clause, "we looked to governmental motive, including whether the government had regulated speech 'because of disagreement' with its message, and whether the regulation was 'justified without reference to the content of the speech.'"). The Maine Legislature's motive for adopting the Sectarian Exclusion is thus properly considered in this case. And as Plaintiffs demonstrated in their Motion for Summary Judgment, the motive was compliance with an incorrect 1980 Attorney General opinion that concluded the exclusion was required by the Establishment Clause. Pls.' Mot. Summ. J. 15-17. That's not a compelling—or even legitimate—government interest.

As Plaintiffs explained in their Motion for Summary Judgment, the Court should not accept post hoc rationalizations for the original adoption of the Sectarian Exclusion. Pls.' Mot. Summ. J. 17-18. As such, the rationalizations that Defendant attempts to mine from the 2003 legislative record, when the Legislature failed to repeal the Sectarian Exclusion, are irrelevant. But even if Defendant is correct that they are relevant, those rationalizations actually further show the absence of a compelling government interest for the Sectarian Exclusion. This is because the legislative record from 2003 reveals the same type of religious animosity that was present in the recent *Masterpiece Cakeshop* case that resulted in a finding that Colorado's Civil Rights Commission had violated the free exercise rights of the baker in that case. For example, Maine Representative Fischer claimed that eliminating the exclusion would "promote," "condone," and "subsidize" discrimination. Jt. Stip. Record Ex. 2 (Doc. 24-2, PageID# 187). Representative Davis sounded the alarm that eliminating the Sectarian Exclusion would result in "Sunni Muslims" and "Shiite Muslims" as well as "Buddhists and Hindus . . . forming their own schools." Jt. Stip. Record Ex. 2 (Doc. 24-2, PageID# 193). And Senator Martin expressed fear that eliminating the Sectarian Exclusion would permit the teaching of "intolerant religious

views." Jt. Stip. Record Ex. 2 (Doc. 24-2, PageID# 205). If the legislative debate over LD 182, which would have repealed the Sectarian Exclusion, is relevant to the question of the government's interests in maintaining 20-A M.R.S.A. § 2951(2), it reveals improper animus against religion rather than a legitimate or compelling government interest.[5]

### III.   The Sectarian Exclusion Violates the Establishment Clause by Disfavoring Religion.

Defendant argues that Plaintiffs' Establishment Clause claim fails for three reasons.[6] The first reason being that Plaintiffs' religion does not require them to send their children to religious schools. Opp. 5. The second asserted reason is that the Sectarian Exclusion does not infringe Plaintiffs' freedom to practice their religion as they see fit. Opp. 5. And the third reason is that, even though the State examines the religiosity of private schools that seek approval to accept publicly funded tuition payments, such examination allegedly does not excessively entangle the State with religion. Opp. 6. Plaintiffs show below that Defendant's arguments fail on each point.

The Plaintiffs' Establishment Clause claim does not hinge on whether Plaintiffs' religion requires them to send their children to religious schools. The Establishment Clause claim does not require an inquiry into Plaintiffs' internal motivations for pursuing a religious education. Nor does the Constitution sanction such an inquiry. Just the opposite. The U.S. Supreme Court's precedent is clear that courts will not delve into such issues as whether a religious belief is

---

[5] The record here also reveals intolerance toward religious viewpoints within the public schools. As Plaintiff Judith Gillis testified, her daughter was "bullied and ostracized" at her public school because of "[h]er Christian beliefs." Jt. Stip. Record Ex. 6 (Doc. 24-6, PageID# 277-78). Enrolling at Bangor Christian Schools has allowed I.G. to be in "an environment where her peer group would share her values and her beliefs." Jt. Stip. Record Ex. 6 (Doc. 24-6, PageID# 280).

[6] Defendant does not cite a single case in the Establishment Clause section of her Opposition brief. Yet, ironically, Defendant asserts that "Plaintiffs cite no precedent" for the notion that the government inhibits religion when it excludes religious options from a government benefit. Opp. 5. But Plaintiffs cited numerous cases to support that proposition. Pls.' Mot. Summ. J. 20-22 (*E.g.*, *Bd. of Educ. v. Allen*, 392 U.S. 236, 243 (1968) (When a law's purpose is the "inhibition of religion then the enactment exceeds the scope of legislative power as circumscribed by the Constitution.")).

11

sincerely held by parties in front of the court. *See Emp't Div., Dep't of Human Res. v. Smith*, 494 U.S. 872, 887 (1990) (noting that courts avoid adjudicating "the place of a particular belief in a religion or the plausibility of a religious claim"); *cf. W. Va. State Bd. of Educ. v. Barnette*, 319 U.S. 624, 634 (1943) ("Nor does the issue as we see it turn on one's possession of particular religious views or the sincerity with which they are held."). Rather, the Establishment Clause inquiry looks at the *government's* actions in deciding to disfavor religion (and thus favor nonreligion) in the distribution of a public benefit. *See Everson v. Board of Educ.* 330 U.S. 1, 18 (1947) ("[T]he First Amendment . . . requires the state to be neutral in its relations with groups of religious believers and non-believers; it does not require the state to be their adversary."). What the Establishment Clause demands is religious neutrality.

In *Zobrest v. Catalina Foothills School District*, the U.S. Supreme Court said that "government programs that neutrally provide benefits to a broad class of citizens defined without reference to religion are not readily subject to an Establishment Clause challenge." 509 U.S. 1, 8 (1993). The obvious corollary is that government programs that discriminate against religion instead of defining the class of citizens broadly *are* readily subject to an Establishment Clause challenge. The Sectarian Exclusion does not provide benefits to citizens of tuitioning towns neutrally. Its very text defines the beneficiaries by excluding religious individuals who want to enroll their students in religious schools from its benefits. *See* 20-A M.R.S.A. § 2951(2).

Nor does it matter that the Sectarian Exclusion leaves Plaintiffs "free to practice their religion however they see fit." Opp. 5. *Trinity Lutheran* forcefully rejected this precise argument as a justification to discriminate against the church in *Trinity Lutheran*. "Of course, Trinity Lutheran is free to continue operating as a church, . . . [b]ut that freedom comes at the cost of automatic and absolute exclusion from the benefits of a public program for which the Center is

otherwise fully qualified." 137 S. Ct. at 2022. Just as Defendant does here, the Department in *Trinity Lutheran* "contend[ed] that merely declining to extend funds to Trinity Lutheran d[id] not prohibit the Church from engaging in any religious conduct or otherwise exercising its religious rights." *Id*. But the Constitution "protects against 'indirect coercion or penalties on the free exercise of religion, not just outright prohibitions.'" *Id*. (quoting *Lyng v. Northwest Indian Cemetery Protective Ass'n*, 485 U.S. 439, 450 (1988)). The Sectarian Exclusion penalizes Plaintiffs by denying them participation in Maine's town tuitioning system based on religion.

Finally, Defendant also disputes Plaintiffs' showing of how the Sectarian Exclusion excessively entangles the State with religion. Defendant claims in one breath that "Maine does not examine the religious beliefs or practices of a school seeking [to accept] public funds" and in the very next breath declares that the State does precisely that by looking "at whether the school promotes a particular faith and/or teaches through the lens of that faith." Opp. 5-6. The stipulated record contains two instances in which the Defendant examined the religiosity of schools seeking approval to accept publicly funded tuition payment. *See* Jt. Stip. Record Ex. 2 (Doc. 24-2, PageID# 171) ("The Kent School Mission Statement as printed from the website yesterday and attached here, states, 'In keeping with our Judeo-Christian heritage and affiliation with the Episcopal Church, we center our life in our Chapel.' This clearly indicates a sectarian school, and therefore the Kent School is ineligible to receive public funds for tuition . . . ."); Jt. Stip. Record Ex. 2 (Doc. 24-2, PageID# 175-80) (inquiring into the purposes for which the Cardigan Mountain School mandates that students attend chapel and approving the school to receive publicly funded tuition payments because it encourages "universal moral and spiritual values" such as compassion, honesty, and respect). This type of inquiry plainly offends the Establishment Clause. *See Mitchell v. Helms*, 530 U.S. 793, 828 (2000) (plurality) ("[T]he inquiry into the

13

recipient's religious views required by a focus on whether a school is pervasively sectarian is not only unnecessary but also offensive. It is well established, in numerous other contexts, that courts should refrain from trolling through a person's or institution's religious beliefs.").

It is thus clear that the Sectarian Exclusion runs afoul of the Establishment Clause by excessively entangling the government in religion. The Sectarian Exclusion requires the State to troll through the religious aspects of schools and judge just how "religious" the schools are that seek approval to receive publicly funded tuition payments. The Sectarian Exclusion then demands that Defendant deny approval to any school that professes sincere religious beliefs and has the temerity to teach those tenets to students who enroll in such schools. And as explained next, this inquiry into the content of speech at religious schools—and the discrimination against certain religious viewpoints—also runs afoul of the First Amendment's Free Speech Clause.

### IV. The Sectarian Exclusion Violates the Free Speech Clause by Denying Plaintiffs the Tuition Benefit Based on Both the Content and Viewpoint of the Speech They Want Their Children to Hear at Their Schools of Choice.

Defendant does not offer a substantive response to Plaintiffs' free speech claim. Instead, she rests on *Eulitt*'s rejection of a free speech claim and an assertion that because "*Trinity Lutheran* did not even involve a free speech claim, there is no basis for relitigating this issue." Opp. 6. While *Trinity Lutheran* focuses on the Free Exercise Clause, the decision does in fact implicate Free Speech concerns, even if obliquely. "As the Court put it more than 50 years ago, '[i]t is too late in the day to doubt that the liberties of religion *and expression* may be infringed by the denial of or placing of conditions upon a benefit or privilege.'" *Trinity Lutheran*, 137 S. Ct. at 2022 (quoting *Sherbert v. Verner*, 374 U.S. 398, 404 (1963)) (emphasis added). The Sectarian Exclusion conditions the town tuition benefit on an eligible student's parents' willingness to forego not only their religious identity and convictions to receive the benefit, but

their ability to ensure their students are taught by teachers who share their family's religious worldview. In other words, they are denied the tuition benefit because of the religious viewpoints taught in their schools of choice. *See Rosenberger v. Rector and Visitors of Univ. of Va.*, 515 U.S. 819, 828, 832 (1995) ("[D]iscriminating against religious speech [i]s discriminating on the basis of viewpoint" and is "presumed to be unconstitutional.").

As a final point, the U.S. Supreme Court has recently clarified that "Government regulation of speech is content based if a law applies to particular speech because of the topic discussed or the idea or message expressed." *Reed*, 135 S. Ct. at 2227. "This commonsense meaning of the phrase 'content based' requires a court to consider whether a regulation of speech 'on its face' draws distinctions based on the message a speaker conveys." *Id*. The Sectarian Exclusion is a content-based regulation because, on its face, 20-A M.R.S.A. 2951(2) regulates religious speech that "promotes a particular faith and/or teaches through the lens of that faith." Opp. 6. "Content-based laws—those that target speech based on its communicative content—are presumptively unconstitutional and may be justified only if the government proves that they are narrowly tailored to serve compelling state interests." *Reed*, 135 S. Ct. at 2226. As explained in Part II.C., *supra*, the Sectarian Exclusion is not justified by any compelling government interest.

The Sectarian Exclusion thus violates the Free Speech Clause just as much as it violates the Free Exercise, Establishment (and Equal Protection) Clauses of the First and Fourteenth Amendments to the U.S. Constitution.

## CONCLUSION[7]

There being no disputed issues of material fact, Plaintiffs respectfully request, pursuant to Fed. R. Civ. P. 56(a), that they be granted summary judgment as a matter of law.

---

[7] Plaintiffs agree with Defendant that they have waived their Due Process Clause claim. *See* Opp. 6 n. 4.

Dated this 10th day of May, 2019.

Respectfully submitted,

/s/ Jeffrey T. Edwards
Jeffrey T. Edwards
PretiFlaherty
One City Center
P.O. Box 9546
Portland, ME 04112-9546
Tel: (207) 791-3000
Fax: (207) 791-3111
Email: jedwards@preti.com

*Local Counsel for Plaintiffs*

/s/ Timothy D. Keller
Timothy D. Keller* (AZ Bar No. 019844)
Institute for Justice
398 S. Mill Avenue, Suite 301
Tempe, AZ 85281
Tel: (480) 557-8300
Fax: (480) 557-8315
Email: tkeller@ij.org

Arif Panju* (TX Bar No. 24070380)
Institute for Justice
816 Congress Avenue, Suite 960
Austin, TX 78701
Tel: (512) 480-5936
Fax: (512) 480-5937
Email: apanju@ij.org

Lea Patterson* (TX Bar No. 24102338)
First Liberty Institute
2001 W. Plano Parkway, Suite 1600
Plano, TX 75075
Tel: (972) 941-4444
Fax: (972) 423-6162
Email: lepatterson@firstliberty.org

Michael K. Whitehead* (MO Bar No. 24997)
Jonathan R. Whitehead* (MO Bar No. 54868)
Whitehead Law Firm, LLC
229 SE Douglas St., Suite 210
Lee's Summit, MO 64063
Tel: (816) 398-8967
Fax: (816) 875-3291
Email: mike@thewhiteheadfirm.com
Email: jon@whiteheadlawllc.com

*Attorneys for Plaintiffs*
*Admitted *pro hac vice*

16

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 10th day of May 2019, a true and correct copy of

**PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR SUMMARY**

**JUDGMENT** was filed and served on the following counsel of record using the Court's

CM/ECF system:

Aaron Frey
Attorney General

Sarah A. Forster
Christopher C. Taub
Assistant Attorneys General
Office of the Attorney General
Six State House Station
Augusta, ME 04333-0006
Tel: (207) 626-8866, (207) 626-8800
Email: sarah.forster@maine.gov
       christopher.c.taub@maine.gov

*Attorneys for Defendant*

Emma Eaton Bond
Zachary L. Heiden
American Civil Liberties Union of Maine
121 Middle Street, Suite 200
Portland, ME 04101
Tel: (207) 619-8687, (207) 774-5444
Email: ebond@aclumaine.org
       zheiden@aclumaine.org

Sarah Goetz
Richard B. Katskee
Alex Luchenitser
Americans United for Separation of Church and State
1310 L Street NW, Suite 200
Washington, DC 20005
Tel: (202) 466-3234, (202) 466-3234, (202) 466-7306
Email: goetz@au.org, katskee@au.org, luchenitser@au.org

Daniel Mach
Heather Weaver
American Civil Liberties Union Foundation DC
915 15th Street NW Suite 600
Washington, DC 20005
Tel: (202) 675-2330
Email: dmach@aclu.org, hweaver@aclu.org

Eric A. Harrington
Kristen L. Hollar
National Education Association
1201 16th Street, N.W.
Washington, D.C. 20036
Tel: (202) 822-7034
Email: eharrington@nea.org, khollar@nea.org

Andrew T. Mason
Maine Education Association
35 Community Drive
Augusta, ME 04330
Tel: (207) 622-4418
Email: amason@maineea.org

David G. Sciarra
Jessica Levin
Education Law Center
60 Park Place
Suite 300
Neward, NJ 07102
Email: dsciarra@edlawcenter.org, jlevin@edlawcenter.org

Jasmine Bolton
Zoe M. Savitsky
Southern Poverty Law Center
400 Washington Avenue
Montgomery, AL 36104
Tel: (334) 956-8200
Email: jasmine.bolton@splcenter.org, zoe.savitsky@splcenter.org

Stephen Whiting
The Whiting Law Firm
75 Pearl Street
Suite 207
Portland, ME 04101
Tel: (207) 780-0681
Email: mail@whitinglawfirm.com

/s/ Timothy D. Keller
*Attorney for Plaintiffs*