UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| DAVID CARSON, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 1:18-cv-00327-JAW |
| | ) | |
| A. PENDER MAKIN, in her official | ) | |
| capacity as Commissioner of the Maine | ) | |
| Department of Education, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER ON DEFENDANT'S MOTION TO DISMISS AND PLAINTIFFS'
MOTION FOR ENTRY OF JUDGMENT**

Applying the rule of mandate, the Court obeys the opinion of the United States

Supreme Court and the mandate of the Court of Appeals for the First Circuit and

declines to dismiss the case these courts remanded to this Court to act in a manner

consistent with the Supreme Court's decision.

## I.      BACKGROUND

This case involves a First Amendment challenge to the constitutionality of a

state statute, 20-A M.R.S. § 2951(2), which makes religious primary and secondary

schools ineligible for public tuition payments. *See Pls.' Compl.* (ECF No. 1). After

losing in the district court and court of appeals, the Plaintiffs took their case to the

United States Supreme Court and won. On June 21, 2022, the United States

Supreme Court decided *Carson v. Makin*, 142 S. Ct. 1987 (2022), reversing the

judgment of the Court of Appeals for the First Circuit and remanding the case "for

further proceedings consistent with this opinion." *Id.* at 2002.  In *Carson*, the Supreme Court concluded that "Maine's 'nonsectarian' requirement for its otherwise generally available tuition assistance payments violates the Free Exercise Clause of the First Amendment." *Id.*  The *Carson* Court wrote "[r]egardless of how the benefit and restriction are described, the program operates to identify and exclude otherwise eligible schools on the basis of their religious exercise." *Id.*

Consistent with the directive of the United States Supreme Court, the Court of Appeals for the First Circuit issued a judgment on July 25, 2022:

> In light of the Supreme Court's decision in <u>Carson, et al.</u> v. <u>Makin</u>, 142 S. Ct. 1987 (2022), reversing this court's judgment, we hereby vacate the district court's decision and remand the case for further proceedings consistent with the Supreme Court's opinion.

*J.* (ECF No. 70).  On August 16, 2022, the First Circuit issued its mandate. *Mandate* (ECF No. 72) (*Mandate*).

On September 21, 2022, the Plaintiffs filed a motion for entry of judgment. *Pls.' Mot. for Entry of J., Including Injun. Relief* (ECF No. 79) (*Pls.' Mot.*).  On November 16, 2022, A. Pender Makin, Commissioner of the Maine Department of Education, responded to the Plaintiffs' motion for entry of judgment that because the Plaintiffs "no longer have any cognizable interest in the application of Section 2951(2), defendant has this date filed a motion to dismiss this action as moot." *Def.'s Opp'n to Pls.' Mot. for Entry of J.* (ECF No. 90) (*Def.'s Opp'n*).  On the same date, Commissioner Makin moved to dismiss the Plaintiffs' Complaint because she says the Plaintiffs no longer have standing and the case should therefore be dismissed as moot. *Def.'s Mot. to Dismiss* (ECF No. 89) (*Def.'s Mot.*).  The Plaintiffs filed a reply in

support of their motion for judgment on November 30, 2022, *Reply in Supp. of Pls.' Mot. for Entry of J.* (ECF No. 91) (*Pls.' Reply*), and opposed the motion to dismiss on December 7, 2022. *Resp. in Opp'n to Def.'s Mot. to Dismiss* (ECF No. 92) (*Pls.' Opp'n*). Commissioner Makin filed a reply on December 19, 2022. *Def.'s Reply in Support of Mot. to Dismiss* (ECF No. 93).

## II.     THE PARTIES' POSITIONS

### A.     Commissioner Makin's Motion to Dismiss

In her motion to dismiss, Commissioner Makin notes that the Plaintiffs originally brought suit on behalf of four public school students who professed a desire to attend a religious school. *Def.'s Mot.* at 1. In the nearly five years that have elapsed since, however, "three of the four children have graduated from high school" and she submits that "they [and their parents] no longer have any cognizable interest" in the outcome of the litigation. *Id.* Nor, she contends, does the fourth child—referred to as R.N.—who transferred in 2019 from a private religious school to a public high school and then to a private, non-religious high school, where he is now in his junior year. *Id.*

In the Commissioner's view, "Plaintiffs no longer claim that but for the statute, R.N. would attend a religious school at public expense" and, "[r]ather, they claim only that should a suitable religious school begin participating in the tuition program (and none has so far), R.N. would be allowed to decide for himself whether to finish his senior year at his current high school or transfer to the religious school." *Id.* at 1-2. She asserts that, because "Plaintiffs have no idea which option R.N. would select," it

3

is "purely speculative as to whether R.N. is suffering any injury as a result of the exclusion of religious schools from the tuition program, and under well-established precedent, the case is now moot and should be dismissed." *Id.* at 2.

## B.   The Plaintiffs' Opposition

The Plaintiffs respond that the Supreme Court ruled in their favor, holding that the "nonsectarian" requirement was unconstitutional, and then remanded the case "for further proceedings consistent with this opinion." *Pls.' Opp'n* at 1 (quoting *Carson,* 142 S. Ct. at 2002).   In Plaintiffs' view, "those proceedings should include entry of a simple declaratory judgment regarding the unconstitutionality of the nonsectarian requirement and a simple injunction barring its enforcement." *Id.*

They argue further that "[d]espite the Supreme Court's decision, [the Commissioner and Maine Attorney General] have maintained their hostility toward religious schools" and that the Commissioner's motion "is nothing more than a recycling of arguments she has repeatedly made throughout this case to challenge the [plaintiffs'] standing." *Id.* at 1-2.   "Those arguments," Plaintiffs contend, "have been rejected at every turn—by this Court, the First Circuit, and the Supreme Court" and "the Court should deny the Commissioner's motion." *Id.* at 2.

The Plaintiffs observe that, "[a]t every stage of the ensuing litigation, the Commissioner asserted that they lacked standing," and that argument has been repeatedly rejected. *Id.* at 4.   They note that Judge Brock Hornby of this Court and the First Circuit each held that—regardless of whether any religious schools would apply for funding if the nonsectarian requirement was struck down—the Plaintiffs

4

had standing because the constitutional injury was the loss of the "opportunity" to seek religious education. *Id.* at 5-6. Finally, the Plaintiffs add, the Commissioner again pressed her standing argument in opposition to their petition for certiorari and on the merits at the Supreme Court, and the Supreme Court nonetheless granted certiorari and ruled in the Plaintiffs' favor. *Id.* at 6-7.

### C.   Commissioner Makin's Reply

In reply, the Commissioner reiterates that all but one student plaintiff, R.N., has graduated high school and "[t]he [Nelson] parents acknowledge that it is up to their son to decide where to complete his final year of high school, and there is no evidence in the record suggesting that he wants to transfer to a religious school." *Def.'s Opp'n* at 1. Commissioner Makin asserts that the Nelsons are not being denied an "opportunity" to send R.N. to religious school and their claimed "'injury' is far too speculative and hypothetical to prevent this case from being moot." *Id.*

The Commissioner adds that her current mootness argument is different than her previous position rejected by this Court, the First Circuit, and the Supreme Court. *Id.* at 2. Her prior argument "was that the plaintiffs lacked standing because a favorable ruling would not redress their injuries inasmuch as there was no evidence that, if they prevailed, any religious school would participate in the public tuition program." *Id.* She submits that now, however, "the case is moot because there is no evidence that even if a suitable school did participate, any plaintiff would attend that school." *Id.* Ultimately, the Commissioner concludes that if parents "sued alleging nothing more than that they wanted the opportunity to find a religious school for

5

their child, without any evidence that the child would actually attend that school if the parents were successful, it is impossible to see how they would have standing," and "because this is precisely the posture of the case now, the matter is moot." *Id.* at 1-2.

### D.     The Plaintiffs' Motion for Entry of Judgment

The Plaintiffs move for entry of judgment: (1) declaring Me. Stat. tit. 20-A, § 2951(2) unconstitutional under the Free Exercise Clause; and (2) permanently enjoining Defendant from enforcing the statute. *Pls.' Mot.* at 1.

They contend that a declaratory judgment is appropriate because the Supreme Court has already held that the exclusion "violates the Free Exercise Clause of the First Amendment," *id.* at 8 (quoting *Carson*, 142 S. Ct. at 2002), and "moreover, the Commissioner acknowledges that a declaratory judgment from this Court is appropriate." *Id.* The Plaintiffs add that a permanent injunction is also warranted, offering that entry of a permanent injunction is appropriate when:

1. the plaintiff "has suffered an irreparable injury";
2. "remedies available at law, such as monetary damages, are inadequate to compensate for that injury";
3. "considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted"; and
4. "the public interest would not be disserved by a permanent injunction."

*Id.* at 9 (quoting *eBay Inc. v. MercExchange, L.L.C.,* 547 U.S. 388, 391 (2006)).  They assert that "[t]here is no question that the Carsons and Gillises 'have suffered'—and that the Nelsons continue to suffer—'an irreparable injury,' namely, the denial of the opportunity to find religious instruction under Maine's tuition assistance program"

and that this "was a denial of their rights under the Free Exercise Clause . . . [which] is irreparable *as a matter of law*." *Id.* at 10 (citation omitted) (emphasis in *Pls.' Mot.*).

The Plaintiffs submit further that monetary damages are inadequate to compensate for their injury because it is not easily measured and because Maine is shielded by Eleventh Amendment immunity, foreclosing the possibility of monetary damages. *Id.* at 15. They add that the balance of hardships weighs in favor of an injunction, especially where "the Commissioner would suffer *no* harm from the imposition of an injunction because there is no harm in the inability to engage in unconstitutional activity or enforce an unconstitutional statute. *Id.* at 16 (citation omitted) (emphasis in *Pls.' Mot.*). Finally, the Plaintiffs offer that the public interest would be served by an injunction because the public has no interest in enforcing an unconstitutional statute. *Id.* at 16-17.

### E.   Commissioner Makin's Opposition

The Commissioner's response echoes her motion to dismiss. She reiterates that the case should be dismissed as moot because three of the four children have graduated and there is—in her view—"no evidence that any suitable religious school will apply to receive public funds or, even if one did, that the child would transfer there for his final year of high school." *Def.'s Opp'n* at 1.

The Commissioner contends that, if the Court grants her motion to dismiss, the Plaintiffs' motion becomes moot and they are not entitled to declaratory or injunctive relief. Even if the case is not mooted, however, she insists that Plaintiffs

7

"still would not be entitled to a permanent injunction" because they "cannot establish a likelihood of irreparable harm." *Id.* In the Commissioner's view:

> to establish that they are entitled to a permanent injunction, plaintiffs need to demonstrate both that Temple or another school that is both within a reasonable commuting distance and aligns with the Nelsons' religious beliefs will apply to participate in the tuition program and that if that were to happen, R.N. intends to transfer to that school. Plaintiffs fail to make either showing.

*Id.* at 8.

Finally, the Commissioner acknowledges that, if the case is not moot, "plaintiffs are entitled to a declaratory judgment." *Id.* at 1.

## F.   The Plaintiffs' Reply

In reply, the Plaintiffs focus on the circumstances surrounding R.N.'s transfer to a non-sectarian school and take umbrage with the Commissioner purportedly "attempt[ing] to cast doubt on the Nelsons' sincerity in desiring [the] opportunity" to seek a religious education for their son. *Pls.' Reply* at 3-5. They add that there is "no basis for the Commissioner's [suggestion] that the Nelsons have no irreparable injury because no religious schools are likely to participate in the program even if an injunction is issued" and submit that "[i]t is the height of chutzpah for the State to suggest that the Nelsons are insincere in their desire for a religious education when it was the State itself that created the conditions it now points to in making that suggestion." *Id.* at 5. Finally, the Plaintiffs contend that "while the Commissioner insists an injunction is not warranted because she agrees not to enforce the nonsectarian requirement," the Court still has and should exercise the power to "enjoin enforcement of the nonsectarian requirement." *Id.* at 7.

8

## III.   DISCUSSION

### A.   The Mandate Rule

In 1838, the United States Supreme Court expounded upon what is now known as the mandate rule:

> When the Supreme Court have executed their power in a cause before them, and their final decree or judgment requires some further act to be done, it cannot issue an execution, but shall send a special mandate to the court below to award it.  Whatever was before the Court, and is disposed of, is considered as finally settled.  The inferior court is bound by the decree as the law of the case; and must carry it into execution, according to the mandate.  They cannot vary it, or examine it for any other purpose than execution; or give any other or further relief; or review it upon any matter decided on appeal for error apparent; or intermeddle with it, further than to settle so much as has been remanded.

*Sibbald v. United States*, 37 U.S. 488, 492 (1838).  This principle "inheres in the nature of judicial hierarchy."  18B CHARLES ALAN WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 4478.3 (3d ed. 2019).  In *Briggs v. Pennsylvania Railroad Company*, 334 U.S. 304 (1948), the Supreme Court forcefully stated that "[i]n its earliest days this Court consistently held that an inferior court has no power or authority to deviate from the mandate issued by an appellate court."  *Id.* at 306.  The Third Circuit observed that "[t]he statutory authority for the power of the appellate courts dates from the first Judiciary Act of 1789 and is now found in 28 U.S.C. § 2106."  *Casey v. Planned Parenthood*, 14 F.3d 848, 856 (3d Cir. 1994).

On August 16, 2022, this Court resumed jurisdiction over this case subject to the mandate of the Court of Appeals for the First Circuit, which in turn issued its

9

mandate under the direction of the United States Supreme Court. *Mandate* at 1. As described by the First Circuit, the mandate rule is a "branch of the law of the case doctrine that 'prevents relitigation in the trial court of matters that were explicitly or implicitly decided by an earlier appellate decision in the same case.'" *United States v. Dávila-Félix*, 763 F.3d 105, 109 (1st Cir. 2014) (quoting *United States v. Moran*, 393 F.3d 1, 7 (1st Cir. 2004)). "Put another way, the mandate rule requires that the trial court conform with the directions of the appellate court on remand." *Id.* (citing *United States v. Bell*, 988 F.2d 247, 251 (1st Cir. 1993)). "A district court seeking to determine the scope of remand must therefore consider carefully 'both the letter and the spirit of the mandate, taking into account the appellate court's opinion and the circumstances it embraces.'" *Id.* (quoting *United States v. Genao-Sánchez*, 525 F.3d 67, 70 (1st Cir. 2008) (quoting *United States v. Connell*, 6 F.3d 27, 30 (1st Cir. 1993)). Thus, the First Circuit "generally requires that a district court conform with the remand order from an appellate court." *United States v. Santiago-Reyes*, 877 F.3d 447, 450 (1st Cir. 2017) (quoting *United States v. Ticchiarelli*, 171 F.3d 24, 31 (1st Cir. 1999)). In *Santiago-Reyes*, the First Circuit focused on whether the appellate court remand was "unequivocal" and whether the "'letter' of [the appellate court's] judgment limited the district court." *Id.* at 450-51.

## B.     Exceptions to the Mandate Rule

In *Connell*, the First Circuit observed that "neither the law of the case doctrine nor its kissing cousin, the so-called 'mandate rule,' is designed to function as a straightjacket." 6 F.3d at 31. "Rather," the First Circuit noted, "there are discretion-

guiding principles, generally thought to be subject to exceptions in the interests of justice." *Id.* But the First Circuit wrote that these exceptions are "narrowly configured and seldom invoked," with the "earmarks" being "new evidence", changing and intervening "controlling precedent", and similar considerations. *Id.*

### C.   Application of the Mandate Rule

#### 1.   The Plaintiffs, Standing, and the Supreme Court Order

In her motion to dismiss, the Commissioner argues that the Plaintiffs have not demonstrated they continue to have standing because three of the student plaintiffs have aged out of the public school system and she questions whether the fourth student, who is enrolled in high school, would now favor a religious high school over his current private, non-sectarian school.

When the lawsuit was filed in 2018, the Commissioner did not contest that the student plaintiffs were interested in attending a religious school. David and Amy Carson's daughter, O.C., had attended the Bangor Christian schools from pre-kindergarten to the sophomore year at Bangor Christian High School, where she was then a student, *see Local R. 56(h) Stip. Record*, Attach. 5, *Dep. of David Carson*, 13:10-14:8 (Nov. 20, 2018) (ECF No. 24); Alan and Judith Gillis' daughter, I.G., transferred from Hampden Academy, a public school, during her freshman year to Bangor Christian, where she was a junior, *id.* Attach. 6, *Dep. of Judith Gillis*, 14:7-19; and, Troy and Angela Nelson's two children, A.N. and R.N., were 15 and 13 years old respectively, the older child a sophomore attending Erskine Academy, a private, non-sectarian school, and the younger in the seventh grade and attending Temple

11

Academy, a religious school.  *Id.*  Attach. 7, *Dep. of Troy Nelson*, 10:8-12:9; *Joint Stipulated Facts* ¶ 60 (ECF No. 25).  Mr. Nelson testified that his older child had begun high school at Temple Academy but transferred to Erskine Academy because they could not afford the tuition at Temple Academy.  *Id.* 11:18-22.

The Commissioner challenged standing before the district court on the ground that "there is no substantial likelihood that the sectarian schools to which they want to send their children . . . will even apply for state approval." *Carson*, 401 F. Supp. 3d 207, 209 (D. Me. 2019).  But based on binding First Circuit authority, this Court rejected the argument.  *Id.* at 210 ("I conclude that the Attorney General's standing argument fails under the First Circuit's decision in *Eulitt [v. Me. Dept of Educ.*, 386 F.3d 344 (1st Cir. 2004)]").  This Court concluded in 2019 that "these parents/plaintiffs have standing."  *Id.*  At no time before this Court did the Commissioner challenge standing on the ground that the students themselves or their parents did not have standing to challenge the Maine statute.

When the case came before the First Circuit in 2020, the Commissioner raised standing, but on the issue of redressability, arguing that Bangor Christian and Temple Academy "might not participate in the tuition assistance program." *Carson v. Makin*, 979 F.3d 21, 30-31 (1st Cir. 2020).  However, the Commissioner made no argument before the appellate court that the then current plaintiffs no longer had standing due to changes in their personal circumstances, and the First Circuit concluded that "the plaintiffs' injury in fact inheres in their having lost the

'opportunity' to find religious secondary education for their children that would qualify for public funding."[1]  *Id.*

The Commissioner again pressed its redressability argument in its opposition to the Plaintiffs' petition for a writ of certiorari, contending that "[t]he Court of Appeals erroneously concluded that Petitioners had standing" even though "[t]he failure of Petitioners to identify a single sectarian school likely to participate in the tuition program renders them unable to establish standing." *Carson*, 142 S. Ct. 1987, *Brief in Opp'n for Resp't* at 28-29, 32 (May 21, 2021).  The Commissioner's response did not mention the Plaintiffs' individual standing.

The Plaintiffs initially consisted of three families: the Gillises, Carsons, and Nelsons.  The Gillises, whose daughter had graduated high school by that point, did not join the Plaintiffs' petition for certiorari.  *Id., Pet. for Writ of Certiorari* at 7 n.3 ("[T]he Gillises have not petitioned this Court for certiorari").  The Carsons joined the February 21, 2021 petition for certiorari, but in their September 3, 2021 written brief

---

[1]      The Commissioner points to language in the First Circuit opinion that states that "future developments might moot the plaintiffs' claims by making clear that neither [Bangor Christian Schools] nor [Temple Academy] will participate in the tuition assistance program." *Def.'s Mot.* at 13 (quoting *Carson*, 979 F.3d at 32).  The Commissioner asserts that "[t]hose future developments have now occurred." *Id.*

This is not quite correct – at least based on what is before this Court in this case.  In its comment, the First Circuit hypothesized what might happen if third parties, namely Bangor Christian and Temple Academy, concluded that they would not participate in public funding because "they would subject themselves to the [Maine Human Rights Act]'s prohibition against discrimination in employment based on sexual orientation." *Carson*, 979 F.3d at 30.  There is no evidence in the record in this case that this has or has not occurred.  *See Crosspoint Church v. Makin*, No. 1:23-cv-00146-JAW (recently filed lawsuit raising this issue among other things).

Instead, what the Commissioner is now claiming is that the Plaintiffs themselves have lost their standing because they can no longer demonstrate that they are students interested in attending a religious school.  On this point, the First Circuit was clear at the time of its opinion: "[T]he opportunity that underlies the plaintiffs' bid for standing - - as the loss of it constitutes the injury in fact - - exists at present but for the 'nonsectarian' requirement." *Id.* at 32.

before the Supreme Court, the Plaintiffs stated that "[t]he Carsons' daughter recently graduated. That is no obstacle to their petition, because the Nelsons' son is still eligible . . .." *Id., Brief for Pets.* at 7 n.4. In her response, the Commissioner recognized that the Carsons' daughter had graduated and again raised redressability but not individual standing. *Id., Brief of Resp't* at 11 n.2, 17-23.

In 2021-22, when the case was before the United States Supreme Court, Chief Justice Roberts was careful to note the status of the children as students "[w]hen this litigation commenced." *See, e.g.*, *Carson*, 142 S. Ct. at 1994-95 ("When this litigation commenced, the Carsons' daughter attended high school at Bangor Christian Schools . . ..").  Notably, in this Court's view, the Plaintiffs offered in their briefing that, as of September 3, 2021, "[t]he Carsons' daughter recently graduated."[2] *Id., Brief for Pets.* at 7 n.4. Yet Chief Justice Roberts' majority opinion focused equally on the Carsons and the Nelsons as petitioners, stating that "[t]his case concerns *two* families" affected by the non-sectarian requirement. *Id.* at 1994 (emphasis added). The Chief Justice added:

> When this litigation commenced, the Carsons' daughter attended high school at Bangor Christian Schools (BCS), which was founded in 1970 as a ministry of Bangor Baptist Church. The Carsons sent their daughter to BCS because of the school's high academic standards and because the school's Christian worldview aligns with their sincerely held religious beliefs. Given that BCS is a "sectarian" school that cannot qualify for tuition assistance payments under Maine's program, the Carsons paid the tuition for their daughter to attend BCS themselves . . .. Absent the "nonsectarian" requirement, the Carsons and the Nelsons would have asked their respective SAUs to pay the tuition to send their children to BCS and Temple Academy, respectively.

---

[2]   The Carsons brought suit on behalf of only one child, O.C. *Compl.* ¶ 8.

*Id.* at 1994-95 (citations omitted).  None of the Supreme Court Justices, in either the majority or the dissenting opinions, touched on the individual standing of the Plaintiffs.[3]  *Id.* at 1987-2015.

### 2.  The Supreme Court Mandate and Standing

Applying the mandate rule to the issue before the Court, the Court determines that this Court is obligated to obey the directive of the Court of Appeals for the First Circuit and the United States Supreme Court.  The opinion of the six Justice majority of the Supreme Court is clear and unequivocal:

> Maine's "nonsectarian" requirement for its otherwise generally available tuition assistance payments violates the Free Exercise Clause of the First Amendment.  Regardless of how the benefit and restriction are described, the program operates to identify and exclude otherwise eligible schools on the basis of their religious exercise.  The judgment of the Court of Appeals is reversed, and the case is remanded for further proceedings consistent with this opinion.

*Id.* at 2002.  In this Court's view, the Commissioner lost the case on June 21, 2022 before the United States Supreme Court and this Court's duty is essentially

---

[3]     When this suit was filed around the start of the 2018-19 school year, all student plaintiffs except R.N. were sophomores or juniors.  Absent evidence that any students repeated a grade, the Court presumes that the high school students would have graduated by—at the latest—June 2021.  When the Supreme Court issued its decision on June 21, 2022, the only remaining secondary student was R.N., then finishing up or having recently finished his sophomore year at Erskine Academy, where he is now a junior.

The Commissioner first raised the issue of the R.N.'s standing in a September 7, 2022, teleconference, when R.N. was presumably in the beginning days of his junior year at Erskine. *Transcript of Proceedings* at 6:17-7:25 (ECF No. 78).  Thus, with all the other student plaintiffs long graduated, the only difference the Court can discern is the passing of a summer and at most a few weeks of school between the end of R.N.'s sophomore year and the beginning of his junior year at Erskine.  To the extent that the Commissioner now argues that the entire case is moot because R.N.'s standing has withered, it strikes the Court that whatever standing R.N. and the Plaintiffs have now is essentially unchanged from when the Supreme Court ruled on the case.  Yet the Supreme Court, referencing the students' status only "[w]hen this litigation commenced," 142 S. Ct. at 1994-95, nonetheless resolved the case on the merits and in favor of the Plaintiffs.

ministerial.  It must act "consistent with [the Supreme Court's] opinion" and to do otherwise, would violate the mandate rule.

Put differently, the mandate rule compels this Court to carry out the unequivocal mandate of the courts to which it owes allegiance, the United States Supreme Court and the Court of Appeals for the First Circuit.  To find an absence of standing in the face of the opinion of the Supreme Court would be in derogation of its directive to act in a manner "consistent with this opinion," *Carson*, 142 S. Ct. at 2002, and the mandate of the First Circuit to engage in "further proceedings" in a manner "consistent with the Supreme Court's opinion."  *Mandate* at 1.  In short, this Court may not both dismiss this case for lack of standing and act in a manner consistent with the Supreme Court's opinion, and its judicial obligation is no different than inferior federal courts since 1789 to obey the express directives of higher authority.

### 3.     The Interests of Justice

If the Court has the discretion to explore current standing, the Court would not conclude that the "interests of justice" allow a reopening of the case at this stage in the proceedings.  *Connell*, 6 F.3d at 31.  In *Connell*, the First Circuit described the circumstances where a district court might deviate from the mandate rule as "narrowly configured and seldom invoked."  *Id.*  Rejecting a proposed deviation from the mandate rule, the *Connell* Court described  "earmarks" for the interest of justice standard: "no new evidence has been unearthed, no controlling precedent has emerged suddenly, the motion for reconsideration contained no suggestion that Connell lacks the means to pay the cost-of-commitment impost, the delay in raising

16

the point is unexcused and seems excessive, and most importantly, we are unpersuaded that the 'decision was clearly erroneous and would work a manifest injustice.'" *Id.* (quoting *United States v. Rivera-Martinez*, 931 F.2d 148, 151 (1st Cir. 1991)).  A quick review of these examples compels the conclusion that the interests of justice do not justify this Court's defiance of the mandate.

It is the nature of cases of this sort that students, who had unquestioned standing at the outset of the case, get older, and some, as here, age out of the school system.  Also, as a consequence of the application of what the United States Supreme Court has determined was a constitutionally flawed state statute, the one current student, R.N., has been attending Erskine Academy and may be well settled there, with friends, teachers, and an environment he is comfortable with.  Although the Commissioner presses the Court to make factual findings about R.N. and his current desire to remain at Erskine Academy or transfer to a religious school, the Court declines to do so because the urged finding is not material to the proper application of the mandate rule.  Nor at this stage of the case should a decision of the United States Supreme Court on the Free Exercise Clause of the First Amendment be subject to the Court's attempted divination of the changeable whims of a teenager.  The Court concludes it would be unjust to allow the Commissioner to compel the dismissal of a case after the Plaintiffs prevailed at the United States Supreme Court because of the necessary delay caused by the judicial system.  The Supreme Court's decision reaches beyond these Plaintiffs and runs to the enforceability of the Maine statute as applied to current residents of Maine.

### 4.     A Mandate Is Not Voluntary

The notion that a district court should dismiss a case the United States Supreme Court has decided and remanded to the district court through the court of appeals for "further proceedings consistent with this opinion" is confounding, especially where, as here, that decision conclusively resolves the sole question in the litigation. If this Court dismissed this case as moot, what effect would the dismissal have? Certainly, this Court is not empowered to dismiss or countermand a final majority opinion of the United States Supreme Court. So what exactly is the Commissioner seeking in the position she has pressed on remand?

In her motion, the Commissioner discusses this issue in two footnotes. *Def.'s Mot.* at 2 n.1, 7 n.4. In the first footnote, the Commissioner says:

> As will be discussed, the Supreme Court ruled at Section 2951(2)'s exclusion of religious schools as applied to public tuitioning violates the First Amendment, and that ruling must and will be followed regardless of whether the lawsuit is now dismissed as moot. Indeed, the Defendant is fully complying with the ruling and promptly approved the one religious school that applied to participate in the tuition program.

*Id.* at 2 n.1. Later, the Commissioner writes:

> Defendant does not intend to seek vacatur of the Supreme Court's decision in this matter.

*Id.* at 7 n.4.

The Court is puzzled. From the Commissioner's statement, it seems that she is voluntarily agreeing to comply with the Supreme Court even though in her view the case is moot. But neither the Supreme Court nor the First Circuit issues mandates to be complied with at the discretion of the loser. Alternatively, the

Commissioner's statement that she acknowledges that the Supreme Court ruling "must and will be followed" suggests that she concedes the ruling is binding on her. Yet, she seems to be drawing a distinction between her sovereign acquiescence and enforceable compliance. Perhaps the Commissioner seeks dismissal of the case because she wishes in her future discretion not to obey the Supreme Court directive on the ground that the decision was never reduced to judgment and is therefore not binding on her. But the place to challenge the *Carson* ruling of the United States Supreme Court was the Supreme Court itself, before the Supreme Court ruled, not in the district court, after it has done so.

A final possibility is the one Maine's Chief Deputy Attorney General raised during the October 11, 2022 conference with the Court in a moment of startling candor: the Commissioner is trying to "wiggle out of" payment of attorney's fees to the Plaintiffs. At one point, the Deputy Attorney General stated:

> [A]nd the other thing, your Honor, is that a lot of this is really being generated by - - by what we expect to be a very large demand for attorney's fees. The plaintiffs have told us that they have incurred close to or maybe even over $2 million in attorney's fees. And so the issue - - beyond the mootness issue - - even if the case is not moot, the issue of whether there is going to any meaningful relief afforded to the plaintiffs goes to the attorney's fee issue.

*Tr. of Proceedings* 9:3-11 (ECF No. 86). The Chief Deputy Attorney General went on to say:

> To be clear, Your Honor, what we are trying to wiggle out of, to be very candid, is that we are trying to wiggle out of the $2 million attorney's fee bill. We - - we - - recognize the Supreme Court has ruled, its decision is final, but this . . . at the heart, at the end of the day, goes to the attorney fee issue, Your Honor.

*Id.* 23:1-8.

But if, as the Deputy Chief Attorney General represented, the Commissioner "recognize[s] the Supreme Court has ruled" and "its decision is final," it is a small step to conclude that even the Commissioner acknowledges that the Court must issue a judgment consistent with the orders of the higher courts to which it owes allegiance. The bottom line is that the Court must comply with the mandate rule and grant judgment to the Plaintiffs. Once the judgment has issued, the Court will address the attorney's fee issue, recognizing that the Plaintiffs, not the Commissioner, won in the Supreme Court and are entitled to a judgment consistent with their victory.

**D.   Judgment**

The Plaintiffs move for entry of judgment: (1) declaring Maine Revised Statutes tit. 20-A, § 2951(2) unconstitutional under the Free Exercise Clause; and (2) permanently enjoining Defendant from enforcing the statute. *Pls.' Mot.* at 2. They are entitled to both.

For the reasons the Court has stated, this case is not moot and it denies Commissioner A. Pender Makin's motion to dismiss. The Commissioner has acknowledged that "[i]f the lawsuit is not dismissed, defendant agrees that plaintiffs are entitled to a declaratory judgment." *Def.'s Opp'n* at 1. However, the Commissioner insists that "plaintiffs are not entitled to a permanent injunction because they cannot meet the first factor of the test[4] – demonstrating that it is likely

---

[4]    The four factors required for a permanent injunction are: (1) that the injunction-seeker has suffered an irreparable injury; (2) that the remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the parties, a remedy in equity is warranted; and (4) that the public interest would not be disserved by an

that they will suffer irreparable harm if a permanent injunction is not issued." *Id.* at 7.

This argument is unavailing for the same reasons the Court has rejected the Commissioner's contention that the case must be dismissed as moot. The Supreme Court held that Maine's nonsectarian requirement violated the Plaintiffs' rights guaranteed by the Free Exercise Clause of the First Amendment. 142 S. Ct. at 2002. "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Roman Cath. Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 67 (2020) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). Far from a "minimal period[] of time," the Plaintiffs have been challenging the constitutionality of this statute since 2018 and the Supreme Court's decision leaves no question that they have suffered irreparable injury. To the extent she asserts that an injunction is unnecessary because she is already voluntarily complying with the Supreme Court's ruling, *see Def.'s Opp'n* at 7 n.4, "[i]t is well settled that a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice." *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982). Moreover, unlike most mootness cases, that conclusion is particularly clear here where the Supreme Court has already ruled on the constitutionality of the challenged statute.

The Court will give the attorneys for both parties seven days from the date of this order to consult and propose to the Court acceptable language for the declaratory

---

injunction. *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). The Commissioner does not contest that the Plaintiffs have established the other three factors.

judgment and the injunction. If the parties are unable to agree on proper language, they must propose their preferred language for the judgment, and the Court will resolve their disagreement.

## IV.    CONCLUSION

The Court DENIES Commissioner A. Pender Makin's Motion to Dismiss (ECF No. 89).  The Court ORDERS the parties to submit within seven days of this order proposed language for a declaratory judgment and permanent injunction, at which time it will grant the Plaintiffs' Motion for Entry of Judgment, Including Injunctive Relief (ECF No. 79).

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 6th day of April, 2023